## MAY DEPARTMENT STORES CO. v. RUNGE.

(Circuit Court of Appeals, Eighth Circuit. March 10, 1917. Rehearing Denied May 29, 1917.)

No. 4698.

1. EVIDENCE ⬤⇒150—COMPETENCY—EXPERIMENTS.

An employé claimed to have been injured while on a freight elevator by a truck falling from an upper floor, due to a defective gate fastening on that floor. Defendant offered evidence that after the accident it was found impossible for a truck similar to that injuring plaintiff to be put under the elevator gate as claimed. *Held,* that the exclusion of this evidence as a self-serving statement was error.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 439.]

2. EVIDENCE ⬤⇒150—COMPETENCY—EXPERIMENTS.

The evidence was so relevant and material as not to be within the discretion of the trial court to receive or reject it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 439.]

3. EVIDENCE ⬤⇒150—COMPETENCY—EXPERIMENTS.

Experimental evidence is prima facie competent and relevant if it is material, that is, if it substantially tends to establish the fact it is offered to prove; but where it is doubtful whether it has such tendency on account of its remoteness in time, place, or otherwise, and where it is likely to tend more to confusion and inconvenience than to justice and certainty, it is discretionary with the trial court to limit the extent to which it may be received.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 439.]

4. TRIAL ⬤⇒252(11)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

In an employé's action for injuries, an instruction that if plaintiff notified defendant or its agents of the defective condition of a gate, and if they agreed to have it repaired, and he relied on this promise and continued in defendant's employ, his knowledge of the defective condition of the gate was no defense, was erroneous where there was no evidence that he gave defendant notice of such defective condition, that defendant promised it would be repaired, or that he relied on such promise, though there was evidence that another employé had called attention to the defective condition, and that something had been said about repairing; plaintiff not being shown to have had any knowledge thereof.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 603.]

5. APPEAL AND ERROR ⬤⇒274(5)—EXCEPTIONS—SUFFICIENCY.

An exception to such instruction on the ground that there was no evidence that plaintiff relied upon any such promise, but that on the other

hand he swore that he never knew of the condition of the gate, squarely called the court's attention to the error in the charge.

Amidon, District Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Albert F. C. Runge against the May Department Stores Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

Richard A. Jones and William R. Gentry, both of St. Louis, Mo. (M. F. Watts and Edwin W. Lee, both of St. Louis, Mo., on the brief), for plaintiff in error.

Marion C. Early, of St. Louis, Mo. (James M. Rollins and E. A. Halter, both of St. Louis, Mo., on the brief), for defendant in error.

Before SANBORN and SMITH, Circuit Judges, and AMIDON, District Judge.

SANBORN, Circuit Judge. This writ challenges the rulings of the court at the trial of an action for damages for negligence which resulted in a judgment for $27,500 in favor of Mr. Runge, the plaintiff below, and against his employer, the May Department Stores Company, a corporation. The plaintiff alleged that he was injured while using an elevator in the company's building by its negligence, in that it failed to exercise ordinary care to prevent a heavy truck from running into the elevator shaft and falling upon him. The company denied the alleged negligence and averred that the plaintiff's injury was caused by his own contributory negligence. There was evidence at the trial tending to show these facts. Runge was employed by the company as a shipping clerk in its six-story building. His desk and principal place of business were in the basement, but he had occasion to go to the fourth floor, and sometimes when he was on the fourth floor he would go to the third floor to answer telephone calls. He used one of the freight elevators in going from the basement to the fourth floor and returning. When he went to the third floor, he passed down a stairway from the fourth floor and crossed in front of the elevator shaft, where he could have seen the condition of the gate, to the telephone and then back again by the same route. He testified that at the time of his injury he stepped upon the elevator in the basement and started up when a heavy truck fell upon him from the third floor, that about 20 minutes before he was injured he saw this truck on the third floor as he was passing that floor on the elevator, that the truck was then standing with one of its ends toward the elevator shaft and about 2½ feet from it, that the floor on which it stood sloped toward the shaft a distance of about six feet, and that he saw the truck standing on this incline. There was a wooden gate made of lattice work at the entrance to the elevator shaft on each floor to keep employés from stepping or falling into the shaft when the elevator was not at their floor. Each of these gates was operated by a motor and was drawn up and lowered by means of a rope which ran over a pulley and was attached to the gate so that the movement of the elevator to any floor would raise the gate on that floor so high that employés could pass under it

into or out of the elevator and the passage of the elevator from that floor would lower the gate into its normal position where it stood on the floor upon two legs one at each end of the gate. When in this position, the lower bar of the gate was about 10 to 13 inches above the floor.

The truck which injured the plaintiff weighed about 200 pounds. It stood on four small wheels and was from 27½ inches to 33 inches in height. The specific negligence on which the plaintiff relied was that the rope, by means of which the gate to the elevator shaft on the third floor was raised and lowered, had been broken and retied several weeks before the accident and had thereby been made so short that it would not allow the lower bar of the gate to descend nearer to the floor than from 33 to 36 inches above it, and that the rope and the gate had been in this condition for two or three weeks at least before the accident. There was evidence in the case tending to prove that the rope, by means of which this gate was raised and lowered, was so broken and retied several weeks before the accident so that during these weeks it would not permit the lower bar of the gate to descend within some 30 inches of the third floor, and there was also evidence tending to prove that during all this time preceding the accident, and at the time of the accident, the rope was long enough and in such a condition that it constantly lowered the gate when the elevator passed from the third floor into its normal position wherein its lower bar was not more than 10 to 13 inches above the floor. The theory of the company was that the truck did not pass through under this gate and fall down the elevator shaft, but that it was upon the elevator when Runge started up, and that one of its handles extended over the edge of the platform of the elevator so that it struck the wooden facing just beneath the first floor as the elevator ascended and threw the truck upon the plaintiff. In support of this theory, it presented testimony that there were marks upon the facing that corresponded with such as would have been made by the handle under these circumstances. There was no testimony of any witness who saw the truck get into the elevator shaft, or go into it, and its course all rested upon inferences from other facts disclosed.

[1, 2] In this state of the case, it was evident that the truck could not have automatically traveled into the shaft if the gate had been in its normal position, for the space between the lower bar of the gate, when in that position, and the floor was only 10 to 13 inches, and the height of the truck was from 27½ inches to 30 inches. In this state of the case and the evidence, the company offered to prove by the testimony of witnesses present in the court, with the assistance of verified photographs which they presented, that subsequent to the accident these witnesses tied the rope so that when the elevator was at the third floor the gate would be raised just as high as it could be raised without breaking the rope and preventing the automatic operation of the gates, and then caused the elevator to move to the next story, thus lowering the gate the least amount it could be lowered while the gate was automatically operated, and then tried to put a truck of the same dimensions and just like that which injured Runge through under the

241 F.—37

gate into the elevator shaft and found that it was impossible to do so. The court below rejected this evidence, not because the offer was not broad enough to show that at the time of the experiment the elevator, the gate, the rope, and all the other paraphernalia were, so far as they conditioned the movements of the gate and the length of the rope, requisite to lower it sufficiently to shut out the truck, in substantially the same condition as when the accident happened, or on any other technical ground, but solely because this evidence was a self-serving statement. This ruling is assigned as error.

The proof offered was certainly not more a self-serving statement than was the testimony of the witnesses for the parties that tended to show that the rope was too short, or was not too short to let the gate shut out the truck. Proof satisfactory to the jury that the rope by which the gate was raised and lowered was retied and kept so short for some time before and at the time of the accident that it would not permit the lower bar of the gate to descend near enough to the floor to shut out the truck was indispensable to the plaintiff's case. When this offer was made, the evidence upon that issue was conflicting. All the witnesses had testified that the gate had been constantly operated after the rope was retied, and that it was operating when the accident occurred. There was a ceiling and other obstructions over the gate above which it could not go. The offer was to prove that subsequent to the accident the witnesses tied the rope to the gate so that it was as short as it could possibly be without raising the gate against the obstructions above and preventing its operation, and still when the elevator was operated, as it was on the day of the accident, the rope lowered the gate so near to the third floor that it was impossible to put a truck of the same size and character as that which injured the plaintiff into the shaft under the gate. It seems clear that, if this evidence had been received and had been believed by the jury, it must have determined the crucial issue upon which the evidence was conflicting, and must have defeated the plaintiff's claim. If the question were whether or not at a time past an article of furniture passed through a specific door or window, whether or not a ladder reached the top of a pile of lumber or of a house, whether or not a rope was long enough to reach between two fixed objects, and the testimony of witnesses was conflicting, subsequent actual tests would be competent, relevant, and convincing evidence of the fact. To the common mind such evidence is even more persuasive and convincing than the testimony of witnesses who casually looked at the articles in some past time.

Mr. Justice Doe said, in Darling v. Westmoreland, 52 N. H. 405, 13 Am. Rep. 55:

"When we want to know whether a certain horse is skittish or is capable of a certain speed, whether a certain substance is poisonous and destructive of animal or vegetable life, whether certain materials are of a certain strength, whether a certain field or a certain kind of soil is likely to produce a certain kind or amount of crop, whether a certain man or brute or machine is likely to perform a certain kind or amount of work, or whether anything can be done or is likely to be done, one way is to speculate about it, and another way is to try it. The law is a practical science, and when it is appealed to to direct what means shall be used to find out whether a certain pile of lumber is likely to frighten horses, if any one asserts that, on this subject, the law

prefers speculation to experience, abhors actual experiment, and delights in guesswork, the person advancing such a proposition takes upon himself the task of maintaining it upon some legal rule, distinctly stated by him and well established by the authorities. Such a proposition is not sustained by the reason of the law. It is sustained by nothing that can be justly called a principle."

At page 404 of 52 N. H. (13 Am. Rep. 55), he says:

"If the question were whether the lumber was capable of floating in water, or making a good fire, or being sawed or cut or planed in a specific manner, or supporting horses and wagons passing over a bridge, there could be no legal objection to the trial of an appropriate experiment upon it in the presence of the jury, or to the evidence of experiments that had been tried elsewhere."

[3] There is no general rule that all experimental evidence is incompetent or inadmissible. The general rule is that it is prima facie competent and relevant if it is material, that is to say, if it substantially tends to establish the fact it is offered to prove, but that where it is doubtful whether or not it has such a tendency on account of its remoteness in time, place, or otherwise, and where it is likely to tend more to confusion and inconvenience than to justice and certainty, it is discretionary with the trial court to limit the extent to which it may be received. 1 Wigmore on Evidence, § 444. The evidence here offered was so relevant and material that it did not fall within the discretion of the trial court to receive or reject it, and it was error to refuse to receive it. Darling v. Westmoreland, 52 N. H. 401, 403, 404, 405, 13 Am. Rep. 55; Gilbert v. Third Avenue Ry. Co., 54 N. Y. Super. Ct. 270, 275; Woelfel Leather Co. v. Thomas, 68 Ill. App. 394, 395, 397; Byers v. Nashville, C. & St. L. Ry. Co., 94 Tenn. 345, 29 S. W. 128, 129, 130; Tackman v. Brotherhood of American Yeoman, 132 Iowa, 64, 106 N. W. 350, 8 L. R. A. (N. S.) 975, 977, 978; Boston Woven Hose & Rubber Co. v. Kendall, 178 Mass. 232, 59 N. E. 657, 51 L. R. A. 781, 783, 86 Am. St. Rep. 478; Olivaras v. San Antonio & A. P. Ry. Co. (Tex. Civ. App.) 77 S. W. 981; Burg v. Chicago, R. I. & P. Ry. Co., 90 Iowa, 106, 57 N. W. 680, 683, 48 Am. St. Rep. 419; Krueger v. Brenham Furniture Mfg. Co., 38 Tex. Civ. App. 398, 85 S. W. 1156, 1157, 1158; Burton v. Railroad Co., 176 Mo. App. 14, 16, 162 S. W. 1064; Beckett v. N. W. Masonic Aid Ass'n, 67 Minn. 298, 302, 69 N. W. 923; Arrowood v. South Carolina & G. Extension Ry. Co., 126 N. C. 629, 36 S. E. 151, 152; Atlanta & Coal Co. v. Mixon, 126 Ga. 457, 55 S. E. 237, 238.

[4, 5] It is assigned as error that the court below charged the jury that if they believed from the evidence that the gate on the third floor was out of order, if they further believed that the plaintiff notified the defendant, or its agents in charge of the building, of the defective condition of the gate, and if they further believed that the defendant or its agents agreed to have the same repaired, that the plaintiff relied upon this promise and continued in the employ of the defendant, that in that case the plaintiff's knowledge of the defective condition of the gate constituted no defense to the action. This charge was erroneous because there was no evidence in the case that the plaintiff gave notice to the defendant of the defective condition of the gate, that the defendant ever promised to him that it would be repaired, or that he ever

relied upon that promise. The error arose from the fact that, when the court gave the charge, it had in mind the testimony of another witness who had testified that he had called the attention of the defendant's agent to the defective condition and the agent had said something about repairing it, but there was no evidence that these facts had ever been communicated to the plaintiff. The defendant excepted to this charge, in the first place, on the ground that it did not fairly state the law and that a man has no right to rely upon indefinite promises for an indefinite length of time, to which the court replied:

"I did not say anything like the conclusion you draw. I said if the manager had been notified of the defect, and he had agreed to remedy the defect, then the plaintiff in continuing his services and relying upon the promise was not guilty of any contributory negligence."

Thereupon counsel for the defendant said:

"May I add an additional exception suggested by my co-counsel here? We except lastly to that portion of the charge which told the jury in substance that, if there was a promise to repair the gate, plaintiff had a right to continue in the employ of the defendant. We make the exception for the additional reason that there is no evidence that plaintiff relied upon any such promise, but, on the other hand, he himself swore he never knew of the condition of the gate."

The court replied:

"I have submitted the question, as to whether he did know it, to the jury. If he did not know of the condition, then the instruction works no harm."

The court never corrected in any way the erroneous charge, but left the matter here. The exception seems to us to have presented the question squarely to the court, and the error of the charge is patent.

Many other questions were discussed in the briefs and arguments of counsel, but the errors to which reference has already been made are fatal to the trial, the evidence at the new trial will undoubtedly be different from that which was presented at the former trial, and the questions of law presented in the earlier trial may not arise again; and for these reasons a further discussion of the issues is omitted. Let the judgment below be reversed, and let the case be remanded to the court below, with instructions to grant a new trial.

AMIDON, District Judge, dissents.