## LOBEL v. AMERICAN AIRLINES, Inc.

### No. 233, Docket 22643.

United States Court of Appeals
Second Circuit.

Argued May 7, 1953.

Decided July 13, 1953.

Jay Leo Rothschild, New York City (Frank R. Cohen, New York City, on the brief), for plaintiff-appellant.

William J. Junkerman, New York City (Haight, Deming, Gardner, Poor & Havens, Douglas B. Bowring and James B. McQuillan, all of New York City, on the brief), for defendant-appellee.

Before L. HAND, CHASE and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is the second appearance before us of this action by a passenger in defendant's airplane for personal injuries sustained in a crash of the plane, apparently because of engine trouble, at Michigan City, Indiana, on December 28, 1946. The first ap-

peal was by defendant from a verdict and judgment of $35,000 for plaintiff. In the first trial plaintiff had relied upon the doctrine of *res ipsa loquitur*, and we reversed and remanded for errors in the charge as to this doctrine. Lobel v. American Airlines, 2 Cir., 192 F.2d 217, certiorari denied 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703. On the second trial plaintiff did not rely on this theory, but instead endeavored to prove certain alleged acts of negligence in the maintenance and operation of the plane. These were controverted by the defendant and the case went to the jury upon a fair charge by the court, with which the plaintiff professed himself satisfied at the time and to which he now takes no exception. Accordingly the verdict for the defendant settles the case unless it is vitiated by errors during the course of the trial. Plaintiff relies upon five alleged errors in the admission and exclusion of evidence. It is our considered view, however, that none of the challenged rulings were such as to cast doubt on the essential fairness of the trial or require upsetting the verdict. The usefulness of jury trials would be seriously impaired and the jury's supposed privilege of untrammeled adjudication restricted if appellate courts were to devise and apply the rigid rules plaintiff now urges.

 The first purported error, and perhaps the one justifying more discussion than the others, is the exclusion in the trial below of testimony given at a Civil Aeronautics Board investigation of the accident by one Hoyt, defendant's superintendent of line maintenance, supervising all mechanical maintenance and equipment on both airplanes and automotive equipment. Introduction of the testimony was sought here, not for the facts surrounding the accident (notably the report of the pilot) which were thoroughly developed otherwise, but for certain claimed admissions; it was excluded below because Hoyt's authority to make admissions of this character on behalf of defendant was not shown. We are unwilling to sustain the action below on this ground. True, the superintendent's powers anent the CAB hearing are not too fully developed; defendant, who was pressing the objection, naturally would not wish

to help toward complete clarification. And an intramural report of Hoyt stating that he had been "assigned" to "represent" defendant at the hearing, together with like statements of Hoyt in testimony referred to below, is hardly adequate proof. But we think the circumstances were such that a person of some authority needed to be designated for the company at the hearing and no one appears to be more appropriate than the supervising superintendent of the maintenance in question at the hearing. We think it not in the public interest to allow an airplane company in these matters of general importance and passenger safety to hide behind a lack of authority in its appointed representatives. The situation is not the same as that appearing in the ordinary civil action where plaintiff must carry the burden of proof even to details of an agency relationship on the part of the defendant. Here the circumstances suggest a *prima facie* authority which was nowhere rebutted and which brings the case within our rulings in Pekelis v. Transcontinental & Western Air, Inc., 2 Cir., 187 F.2d 122, 128–129, 23 A.L.R.2d 1349, certiorari denied Transcontinental & Western Air, Inc. v. Pekelis, 341 U.S. 951, 71 S.Ct. 1020, 95 L. Ed. 1374.

Nevertheless we find here lacking another requirement stated as part of the ruling in that case: that a real inconsistency between the proffered testimony and that developed for defendant at the trial must be shown. Hoyt's testimony was taken by the plaintiff by deposition for use in this case on four different occasions after the action was brought and before the first trial; and portions of what were said to total 337 pages of deposition were offered at some five or six different times by the plaintiff and freely received at the trial below. Plaintiff's counsel disclaimed any purpose of showing inconsistency between Hoyt's testimony before the CAB and his deposition; and none is suggested. What is desired is to show some difference in opinion or deductions to be drawn from matter in evidence between Hoyt and Healey, the assistant superintendent of maintenance, who testified for defendant at the trial. There was no question about the underlying facts; the differences,

if any, amounted only to slight nuances of variation in the interpretation of the pilots' reports as to the condition of the airplane.

To develop the background a bit, it may be pointed out that the flight originated as an extra section at Buffalo, New York, to proceed to Chicago, with a landing at Detroit. The plane, a two-engine Douglas DC-3, was flown in from New York to Buffalo by defendant's Captain Williams as pilot. It was held at Buffalo for about 12 hours due to weather, during which, according to the testimony, a mechanic of defendant (who testified below) performed a three-hour pre-flight inspection, after which the plane was serviced with gasoline and oil by another mechanic who also testified. At 3:53 a.m. on December 28, Captain Williams departed from Buffalo to Detroit, but returned after 19 minutes in the air because he encountered severe turbulence. Williams' tour of duty being then completed, the plane departed from Buffalo at 5:49 a.m. with Captain Frank Ham as pilot. It made its scheduled stop at Detroit from 8:21 to 8:48 a.m. After refueling and discharging one passenger there, it took off for Chicago with 18 passengers and a crew of 3. It made several reports by radio; then at 9:02 a.m. it reported that it was over South Bend and gave its estimated arrival time at Chicago as 9:31. It also advised that the airplane would not be available for immediate turn-around after arrival at Chicago. At 9:18 the Chicago radio operator recorded: "Flight tells Chicago that both engines are going bad and that he is descending at the rate of 1,000 feet per minute and is looking for an opening in the overcast." Almost immediately Captain Ham reported "that present altitude is 900 feet," and crashed at approximately 9:19 a.m. Ham and his first officer, Mr. Ring, were killed; the stewardess and all the passengers survived.

The pilot's maintenance report was recovered from the plane after the accident and was introduced into evidence by the plaintiff. On this report Captain Ham had made several entries under the section headed "Difficulties noted during flight," including such matters as left battery very weak, left carburetor control does not give posi-

tive action, Captain's side window cracked. All these matters, together with others such as defendant's inspections of the plane made before the accident and one made on behalf of the CAB, were naturally extensively explored during the trial. Without reciting details here it is sufficient to say that the jury's verdict exonerating the defendant from negligence was justified on the evidence. But the immediate question is as to the bearing of Hoyt's alleged admissions on matters otherwise thoroughly covered. Indicative of the nature of the testimony are those portions covering the points most clearly involved, namely, the recital of the difficulties noted by the pilot and his report that the airplane should not be turned about for immediate return at Chicago, although he reported no difficulty in the flight and deliberately chose (as the evidence showed) to continue with the particular plane both at Buffalo and at Detroit. Healey testified at the trial as to each of the items listed that in his opinion there was nothing there that would "render the aircraft unairworthy." In the excluded CAB examination Hoyt was first asked to read and explain the items referred to on Captain Ham's report, which he did. Then he was asked: "In your opinion was there any condition there that he reported which would make the aircraft unairworthy?" To this he answered: "There is no item there that we are concerned with, but it is my opinion that he went by the number of items to be taken care of, rather than real seriousness of any item." Then, explaining his meaning by saying, "His recommendation was that the airplane should not be turned around at Chicago," he answered "Yes, sir," to the question, "Do you believe that he was justified in making that recommendation in this instance?"

We do not see discrepancy here sufficient to require admission of this evidence or certainly to overturn this judgment. Of course were the evidence to have been admitted, it would then have been necessary for further collateral expeditions to test from Hoyt what he meant, how much opportunity he had to amplify and explain at the CAB hearing and so on. Actually the views of Hoyt and Healey—and apparently

also of Ham—were not at all in discord. The listed items were matters which should be corrected, but did not render the aircraft unairworthy. Similarly uncontroverted is Hoyt's interpretation of the entries showing 90 degrees on the left carburetor and 100 on the right, which he said indicated that Ham "did not have the required spring." Healey discussed Ham's entry that "left carburetor control does not give positive action" and said that he interpreted it "to mean that it is not positive in action, that is, the clip, the positioning clip, is not positive in action." Hoyt really seems in definite accord in saying before the CAB, "This would indicate then he did not have the required spring." Surely there must be more than such slight differences in interpretation before defendant is charged with some prejudicial admission by this excluded testimony.

 The other objections will be disposed of more briefly. The admissibility of the results of an experiment conducted by defendant's pilots showing the effects of a piece of paper in the poppet valve in the fuel line was properly within the trial court's discretion under the conditions of similarity, if not of perfect identity, with that of the airplane in the accident. United States v. Ball, 163 U.S. 662, 673, 16 S.Ct. 1192, 41 L.Ed. 300; May Department Stores Co. v. Runge, 8 Cir., 241 F. 575, 579; Gaillard v. Boynton, 1 Cir., 70 F.2d 552, 553; Lever Bros. Co. v. Atlas Assur. Co., 7 Cir., 131 F.2d 770, 777; 2 Wigmore on Evidence §§ 444, 445, 3d Ed.1940. The strictness of identity of conditions required by plaintiff's contention would mean—as, indeed, he says —that no showing by experiment in a field of mechanical operation would ever be possible, since the conditions could not so be duplicated, and hence jury and court would be deprived of helpful and informative illustrative evidence. There was no invasion of "the province of the jury" in allowing defendant's experts (whose qualifications were not attacked) to give their opinions on technical matters. Transportation Line v. Hope, 95 U.S. 297, 298, 24 L. Ed. 477; Planing Machine Co. v. Keith, 101 U.S. 479, 25 L.Ed. 939; Peoples Gas Co. of Ky. v. Fitzgerald, 6 Cir., 188 F.2d 198;

Mutual Life Ins. Co. of N. Y. v. Frost, 1 Cir., 164 F.2d 542, 547; Rackoff v. United States, 2 Cir., 78 F.2d 671, 673. Nor did the court err in allowing Healey to interpret or explain the meaning of terms in the reports or "squawk" sheets of Captains Ham and Williams; our discussion of the first point above illustrates the soundness of the ruling.

 Finally there was no error in excluding the lengthy Manual of Civil Air Regulations from the jury room. The court properly took judicial notice of these regulations and, in response to specific requests from the plaintiff, charged explicitly as to particular regulations in point. To have invited the jury to indulge in extended examination of the entire Manual might well have served to divert the panel from its main task, if it did not lead it into improper byways; at any rate, the matter seems well within the court's discretion. See Parker v. James Granger, Inc., 4 Cal.2d 668, 52 P. 2d 226, certiorari denied 298 U.S. 644, 56 S.Ct. 958, 80 L.Ed. 1375.

Affirmed.