# Howard L. Leonard v. John W. Henderson

(99 A2d 698)

May Term, 1953.

Present: **Sherburne, C. J., Jeffords, Cleary, Adams and Chase, JJ.**

Opinion Filed October 6, 1953.

*Reginald B. McShane* for the plaintiff.

*Witters, Longmoore & Akley* for the defendant.

**Sherburne, C. J.** The plaintiff seeks in this action to recover for personal injuries received in an automobile accident on December 6, 1950, while attempting to pass the defendant. The cause comes here upon plaintiff's exceptions after a verdict and judgment for the defendant.

The defendant had been traveling northerly in Lyndon on U. S. route 5, a two lane resurfaced cement highway, and was carrying children home from school in a station wagon type of school bus. He had gone around a curve to the right and was traveling at about thirty miles per hour when about to enter a long straight stretch at a point about 165 to 170 feet southerly of the south end of the dooryard of James D. Chamberlain, which was located on the west, or the defendant's left, side of the highway. From this point he drove into the left lane directly toward the south end of the dooryard, and slowing down to twenty-five miles per hour started to drive in to leave Mr. Chamberlain's daughter. When all but his right rear wheel was off the pavement he was sideswiped on the left side from behind by the car driven by the plaintiff, which went out of control past the defendant, skidded sideways across the frozen gravel surface of the yard and struck with great force against a tree near the highway. This car when traveling at 40 to 50 miles per hour was driven off the left side of the pavement at a point a little southerly from where the defendant drove off the pavement and 170 feet southerly of the tree, and turned into a skid when 150 to 155 feet from it. The accident happened at 4:30 P.M. There was no snow on the ground and the weather was clear.

Sergeant Fletcher of the state police who investigated the accident, having testified in direct examination concerning the skid marks made by plaintiff's car, and having testified on

cross-examination that these marks were made by going sideways and were not the characteristic marks made by the application of brakes, and that the distance skidded and the damage to the car when it struck the tree were evidence of speed, was asked: "Could a car with adequate brakes, going 50 miles an hour, have been stopped, in your opinion, by the application of brakes in less than 170 feet and 3 inches?" Subject to the objection that there was no evidence of the application of brakes, the witness answered: "I wouldn't think so." Later in redirect examination he testified that the plaintiff's car was traveling at least 40 to 50 miles per hour, and in his opening statement to the jury plaintiff's counsel stated this speed to be 40 to 50 miles per hour. There was no dispute about this speed. If error it is not shown to have prejudiced the plaintiff.

Sergeant Fletcher having testified that he was familiar in a general way with the road shoulder on both sides of the highway in the vicinity of the Chamberlain place, was asked: "Is there a shoulder three or five feet wide that can be safely traveled from the point where the side road leads off southerly of the Chamberlain house, up to a point beyond the house?" Subject to the objection that the question called for a conclusion as to whether or not it is safe to travel along the shoulder, the witness answered: "I know that there is a shoulder there, I don't know how wide it is in various parts, I would expect probably at least three feet wide anyway." The question was unanswered as to whether the shoulder can be safely traveled. The plaintiff admits that the answer standing alone does not constitute an expression of opinion, but argues that the question and answer taken together have that effect. We do not agree. If error, it was harmless. See *Rowley* v. *Shepardson*, 85 Vt 266, 269, 81 A 917.

Douglas Henderson, a son of the defendant, a graduate of Lyndon Institute in 1950, was riding on the school bus at the time of the accident. Having pointed out on a plan of the locality the point from where the school bus, after rounding the curve southerly of the Chamberlain premises, traveled entirely in the left lane, and having testified that from that point on the right hand lane was clear of traffic until they

went into the dooryard, was asked: "Do you know of anything that would have prevented a car proceeding north from that point on from having the whole of the right hand lane in which to travel?" Subject to the objection that the question called for a conclusion, the witness answered: "No, I can't think of any possible reason." The situation is unlike that in *Merrihew's Admr.* v. *Goodspeed,* 102 Vt 206, 210, 147 A 346, 66 ALR 1109, cited by the defendant and *Spinney's Admx.* v. *Hooker & Son,* 92 Vt 146, 152, 102 A 53, cited by the plaintiff. In view of the testimony of the witness that the right lane was clear of traffic until the school bus went into the dooryard there was no observable physical condition that prevented a car from using the right lane unless that lane was obstructed in some manner. Viewed in this sense the question did not call for a conclusion. In support of his exception the plaintiff does not call our attention to V. S. 47, §10,219, subd. V, which makes it unlawful, when overtaking another vehicle while proceeding in the same direction, to pass on its right, or make any claim that he had no reason to know that the school bus might not turn back into the right lane. If these matters were comprehended in his objection and made the question objectionable he should have called them to our attention. Error is not made to appear.

The defendant testified without objection that his school bus was equipped with a side mirror which was so adjusted that he could see to the rear, and also a rear view mirror on the inside; that as he approached the Chamberlain house and before starting to cross over into the left lane he looked in the side mirror, and didn't see any car behind him, but would have seen one if within the range of his view; that this side mirror was broken in the accident and that he had replaced it with a similar one; that during the trial, in the morning before court on Friday, August 8, 1952, he and Messrs. Chamberlain, Witters, Longmoore and Bohlen placed his bus as nearly as he could in the same location it was in when he started to cross over into the left lane on December 6, 1950; that he adjusted the mirror as nearly as he could as it was adjusted on that occasion; that he, Bohlen and Chamberlain observed the view of a person in the driver's seat through the mirror;

that Bohlen made some measurements to a car behind which was driven by Mr. Longmoore and was placed on the same side of the highway about 300 feet behind the bus at a point where it first came into view as the defendant looked in his mirror; and that he could see the full width of the road back to that car. On cross-examination the defendant testified that he had the same clear view of 300 feet on the night of the accident as on that morning, and on re-direct that the inside rear view mirror was adjusted so that he could see the children and that he couldn't see as far with it as with the side mirror. He was then asked if on that Friday morning the rear view mirror on the side was adjusted as it was at the time of the accident, and the witness answered: "Yes, it was." After which the plaintiff objected on the ground that the evidence was immaterial, irrelevant and incompetent. The court noted that the answer was already in the record and stated: "We will allow the answer, you may have an exception." On recross-examination the defendant testified that the weather conditions were about the same on the Friday morning as on the afternoon of December 6, 1950, and that the visibility was about the same.

Over the objection that it was immaterial, irrelevant, incompetent and self serving, Mr. Bohlen, a civil engineer who had made a plan of the locality which was admitted as an exhibit, testified to the effect that as the defendant spotted the bus on that Friday morning the front left hand wheel was about 8 inches to a foot on the easterly side of the center of the highway; that he sat in the driver's seat of the bus after it was so spotted, looked in the side rear view mirror and waited until he could see the entire Longmoore car, which was proceeding slowly in the east lane behind and toward him, at which time it was immediately stopped through a pre-arranged signal to Mr. Witters and he to Mr. Longmoore; that after the car had been so stopped he could see the entire car, but could not see back of it because of the curve, and that measured along the center line of the highway it was 295 feet from the rear of the bus to the front end of the car. The witness scaled and sketched on the plan the locations of the bus and Longmoore car as so spotted. On cross-examination he testified

that he could not see any portion of the right or east lane of the highway beyond the Longmoore car because the view was obstructed by the side of the bus. Subject to the same objection, Mr. Chamberlain testified to being present on the Friday morning when the bus and Longmoore cars were stopped and to sitting in the drivers' seat of the bus, and that as he looked in the mirror the front and left hand side of the Longmoore car were entirely in his view.

No question is raised that the highway had been changed between the dates of the accident and experiment. Although not claimed to be conclusive it is pointed out that the accident and experiment were separated by an interval of 20 months. Although admitting that there was testimony from several witnesses that at the time of the accident it was light enough to see approaching traffic without lights, in fact the ambulance driver didn't have his lights on in going to the scene of the accident, the plaintiff complains of the dissimilarity of the visibility on a clear morning in August and a clear day in December at 4:30 P.M., and says that the ability to see approaching traffic does not establish what the defendant could have seen through the mirror attached to his bus, thereby overlooking the undisputed evidence of the defendant that when he looked in his mirror he had the same clear view of 300 feet on the day of the accident as on the Friday morning, and that he would have seen a car if there had been one within the range of his vision. He complains because the sideview mirror used at the time of the experiment was not on the bus at the time of the accident; although testified to as similar he says there was no evidence showing the size, shape and condition of either mirror. Other dissimilarities pointed out are that there were children in the bus at the time of the accident, and that the bus was moving at a speed of 25 to 30 miles per hour, and these facts may have interfered with the defendant's backward view. The plaintiff also claims that the testimony of Bohlen as to the experiment is also incompetent because based on self serving declarations, acts and conduct of the defendant out of court, and that because he was acting for the defendant his testimony about participation in the experiment out of court was also self serving.

██ The admissibility of evidence of this character does not depend upon exact similarity of conditions. It is enough if they are sufficiently similar to make them essentially the same. *Davis* v. *Raymond*, 103 Vt 195, 200, 152 A 806; *State* v. *Winters*, 102 Vt 36, 47, 145 A 413; *Thayer* v. *Glynn*, 93 Vt 257, 260, 106 A 834; *State* v. *Flint*, 60 Vt 304, 317, 14 A 178; *Huckabee* v. *Montgomery*, 113 Vt 75, 29 A2d 810. Then, too, in cases of this sort much must necessarily be left to the discretion of the trial court, and its action will not be disturbed unless it clearly appears that its discretion has been abused. *State* v. *Simonds*, 108 Vt 60, 63, 182 A 185; *Davis* v. *Raymond*, *supra*; *State* v. *Winters*, *supra*; *Thayer* v. *Glynn*, *supra*.

In *Huckabee* v. *Montgomery*, *supra*, an assault and battery case, two photographs offered for the purpose of showing the plaintiff's position at the time he was struck were held to have been properly received in evidence, when there was evidence tending to show that the position of the plaintiff as shown by them was practically the same as when the defendant struck him. In *Davis* v. *Raymond*, *supra*, an accident happened to a 10 year old boy in Burlington at about 6:45 P.M. on March 31, 1927. One Buxton, a witness for the plaintiff, testified that on that evening he traveled south along South Union Street to the junction with St. Paul Street and turned the corner into St. Paul street, and just before he made the turn he saw a boy on a tricycle near the curb on the east side of Shelburne Road near the Finney House, or a little south of it. On October 6, 1927, in the evening a boy of apparently the same age was placed on the same tricycle at three different points near the east curb on Shelburne Road, namely, near the water cap in front of the Finney House, opposite an Elm tree standing 42 feet north of the water cap, and opposite two poles standing 76 and 84 feet respectively north of the water cap. Mr. Ryan, one of the witnesses for the defendant who made the test, testified that from the curb at the junction of South Union and St. Paul Streets he could not see the boy on the tricycle either when the latter was in front of the Finney House or opposite the elm tree. This evidence was excepted to on the grounds that it did not appear that the boys were of the same age, size or build, or dressed the same, or that the .

witness had the same eyesight as Buxton. While it did not appear that the boys were the same size and build, or dressed the same it did appear that the boy who took part in the test was apparently about 10 years old, about the age of the other boy at the time of the accident, and that the witness' eyesight was all right so far as he knew, although he wore glasses to read with but not all the time. This exception was not sustained.

In *State* v. *Winters, supra*, a witness set up in the court room articles taken from a bedroom and arranged them in substantially the same relative position as they were in when he first viewed the scene. As against the objection that it was impossible in the court room to exactly reproduce the conditions as they were, this Court said: "The admission of this demonstration before the jury did not depend upon the exact reproduction of the conditions as they were in the room when the crime was committed. * * * Substantial accuracy with reference to reproducing the relative evidentiary conditions * * * was sufficient." In *Thayer* v. *Glynn, supra*, a photograph of the scene of the accident in which was shown a horse and wagon and an automobile which had been placed by someone acting for the plaintiff, and which it was claimed were located just as the plaintiff's evidence tended to show they were at the time of the collision was offered in evidence. As against the objection that the team and automobile were not the ones involved in the accident and that the photograph amounted to no more than an experiment, the Court said: "An experiment is not necessarily to be excluded. Whether made in or out of court, it may, in the discretion of the court, and subject to some administrative requirements, be admitted. * * * The fact that the material objects used in the experiment were not the identical ones involved in the accident does not affect the question of admissibility. It is enough if, as here, they were sufficiently similar to make the conditions essentially the same.

Upon the authority of the foregoing cases no abuse of discretion in receiving evidence of the experiment is made to appear. The spotting of the bus referred to in the testimony of Bohlen was first connected up in the testimony of the de-

fendant. The testimony of the defendant and Bohlen was similar to the evidence referred to in one or more of these cases, and was not inadmissible because self serving.

■ Had the evidence relative to the experiment that came in subject to exception been wrongfully received it was harmless. All the testimony from the defendant relative to the experiment came in without objection except the answer in re-direct to the question, if on the Friday morning the rear view mirror on the side of the bus was adjusted as it was at the time of the accident. His answer: "Yes, it was" is substantially the same as his previous unexcepted to testimony that he adjusted the mirror as nearly as he could as it was adjusted on the occasion of the accident, and consequently harmless. *State* v. *Orlandi*, 106 Vt 165, 173, 170 A 908; *Woodhouse* v. *Woodhouse*, 99 Vt 91, 119, 130 A 758. Error in the admission of evidence over objection and exception after evidence of like tenor has been admitted without objection is harmless. *State* v. *Fairbanks*, 102 Vt 283, 292, 147 A 682.

As we have previously noted, the defendant testified without objection that he and Messrs. Chamberlain, Witters, Longmoore and Bohlen located his bus on the highway for the experiment; that he, Bohlen and Chamberlain observed the view of a person in the driver's seat through the side rear view mirror; that Bohlen made some measurements to a car driven by Mr. Longmoore and placed on the same side of the highway about 300 feet behind the bus at a point where it first came into view as the defendant looked in the mirror, and where he could see the full width of the road back to the car. The testimony of Bohlen and Chamberlain about sitting in the bus so located and about what they could see of the highway and of the Longmoore car, so placed, when looking in the side mirror is of like tenor, as is also Bohlen's testimony about the measurement of 295 feet from the rear of the bus to the front end of the car. The plaintiff, however, calls attention to the testimony of Bohlen that he was the one who sat in the bus while the Longmoore car was driven in the experiment, and his testimony about the signals to stop, about the location of the left front wheel of the bus on the plan, about how the

location of the Longmoore car was determined and about sketching it on the plan, and about various other measurements, and claims that Bohlen's testimony adds something to the test. The test was to determine how far back of the bus as located by the defendant the front of a car in the same lane could be seen in the side mirror. This car was so placed that its entire front end and left side and the full width of the highway back to the car could be seen in the mirror. The view had was after the car was so placed. The details as to how it was driven there, including the signals to stop, are unimportant. The various measurements and the location of the bus, its right front wheel and of the car on the plan were sufficiently connected up by the defendant's testimony to make them admissible generally. *State* v. *Shaw*, 73 Vt 149, 154, 155, 50 A 863; *Tyrrell* v. *Goslant*, 93 Vt 63, 66, 67, 106 A 585.

Finally, the plaintiff says that judgment should be reversed and the cause remanded to the end that no injustice be done.

First, he says that an examination of the whole record discloses no evidentiary basis upon which either the jury could have properly predicated a verdict of not guilty or such a verdict could be justified. In a suit of this nature the plaintiff has the burden of proving [1] negligence upon the part of the defendant, [2] that such negligence was the proximate cause of the injury, and [3] that he, himself, was free from contributory negligence. Unless all three of these issues are proved there is no evidentiary basis for any verdict other than one for the defendant. Unless the evidence in support of all three of these issues is undisputed and is so conclusive in character as to admit of no opposing inferences, or is of such conclusive character that the court in the exercise of a sound judicial discretion would be compelled to set aside a verdict in opposition to it, it cannot be said that there is no evidentiary basis for the jury to have properly predicated a verdict for the defendant thereon. *Pacific Lumber Agency* v. *National Aircraft Materials Corp.*, 108 Vt 10, 15, 182 A 192; *Spaulding* v. *Mutual Life Ins. Co.*, 94 Vt 52, 56, 57, 109 A 22. We are left to make a search of the record, without any help from

the plaintiff, for the purpose of ascertaining if there is evidence of this quality in support of these three issues. This is inadequate briefing and merits no consideration. The rule referred to in *Parker* v. *Bowen*, 98 Vt 115, 119, 126 A 522, and *Rice's Admr.* v. *Press*, 117 Vt 442, 450, 94 A2d 397, that when an excepting party takes the position that there is no evidence to establish a material fact, and upon that question tenders the transcript, it becomes the duty of the other party to point out such evidence, does not apply to this defendant. He was not required to establish any fact. In short, the rule only applies to a prevailing party upon whom is the burden of proving a certain fact.

Secondly, the plaintiff says that the defendant became very ill at a crucial stage during his cross-examination, losing consciousness and becoming inert, and had to be removed from the court room in the presence of the jury. He says that the natural effect of the defendant's illness was to engender a feeling of sympathy for him in the minds of the jury. The transcript discloses that the defendant became ill and was taken out of the court room, and that the court told the jury that he came to court that morning not feeling well, and recessed the court from Friday until Tuesday, when the defendant resumed the stand, and the plaintiff was afforded a full opportunity to finish his cross-examination. It is not so unusual for a witness to collapse under similar circumstances as to excuse the plaintiff from showing some special circumstance or reason, other than the collapse, why he thinks he has been prejudiced. This the plaintiff has not done.

The appropriate action for a party to take, when he thinks that a verdict is unsupported by the evidence, or when he thinks that the verdict is the result of bias, passion or prejudice on the part of the jury, is to move in the trial court to have the verdict set aside. If, in the absence of such a motion, a judgment should ever be reversed on these grounds, and a new trial granted to the end that no injustice be done, the plaintiff has not here shown that he is entitled to such relief.

*Judgment affirmed.*