274 P.2d 153

**HODGKINS et al.**

v.

**CHRISTOPHER et al.**

No. 5794.

Supreme Court of New Mexico.

Sept. 8, 1954.

Whatley & Oman, Las Cruces, for appellants.

Sherman & Hughes, Deming, for appellee.

SADLER, Justice.

This is an appeal from a judgment entered by the district court of Luna County in an action by the plaintiff in that court under the wrongful death statute in which he was awarded a recovery against defendants by the jury. Appellants here were the defendants below and the parties will be designated here as they were below.

In his complaint filed May 15, 1953, the plaintiff, as administrator of the estate of decedent, sought $60,000 as the value of decedent's life and $1,015, subsequently reduced to $910.06, by way of ambulance, medical and funeral expenses. Negligence on defendants' part was based on the allegation that defendant, Sanford, at the time of the accident was operating the tank trailer belonging to defendant, Christopher, at an excessive and unlawful speed and was following too closely behind the pickup in which decedent was riding and in failing to keep a proper lookout for other travelers on the highway. The defendants answered entering a general denial and pleading joint venture on the part of plaintiff's decedent and those accompanying him at the time of the accident which was said to have been a proximately contributing cause of the accident.

Thereafter, Mountain States Mutual Casualty Company, a corporation, filed its third party complaint setting up the fact that it was the insurer of the workmen's compensation policy carried by the New Mexico State Highway Department. It sought recovery from defendants by way of assignment of the monies paid out by it for ambulance, medical and funeral expenses in connection with the death and burial of decedent.

The facts recited below may fairly be said to be within the jury's verdict. The decedent, Alick F. Morrison, at time of his death, was an employee of New Mexico State Highway Department as a No.

2 Operator, receiving a salary of $210 per month. He was married and resided with his wife, pregnant at time of his death, at Deming, New Mexico. The crew in which he worked was composed of himself, E. V. Krametbauer and Laddie Kurtz, the latter two appearing as witnesses in the case. All members of the crew maintained their homes in Deming from which point they traveled on weekends to and from their work in an International pickup truck owned by the Highway Department. From Monday to Friday of each week they lived in a trailer house two miles east of Animas from which place they traveled daily in the pickup to and from their work.

On the day of the accident which resulted in decedent's death, April 10, 1953, they were working on a job near Hachita, New Mexico. In the forenoon trouble developed in one of their road machines, whereupon they terminated work at the job and decided to go to Hachita to look over a section of road there and, thence, on over to Deming. They came onto U. S. Highway 70–80 several miles west of Gage, New Mexico, where the Hachita road intersects the highway and turned east towards Deming. The deceased was riding in the cab on the right side of the pickup, Laddie Kurtz was in the middle and Krametbauer was driving. While proceeding along the highway between 35 and 40 miles per hour, a tank trailer weighing approximately 22,000 pounds owned by the de-

fendant, Roscoe Christopher, and driven by the defendant, Douglas Sanford, ran into the rear of the pickup belonging to the New Mexico Highway Department, inflicting the injuries on decedent from which he died at Ladies Hospital in Deming the following day.

The jury's general verdict in favor of the plaintiff carried with it a finding that the defendants were guilty of negligence in the respects alleged in plaintiff's complaint as recited hereinabove, the major factor in which was excessive speed in running down the pickup truck in which decedent was a passenger and inflicting on him mortal injuries. The verdict awarded damages in plaintiff's favor in the sum of $45,000 upon which a joint and several judgment in his favor was rendered against the two defendants and their dissatisfaction with such judgment becomes the basis of this appeal.

The first claim of error urged on behalf of defendants relates to the admission in evidence of certain expenses as the basis for damages, to-wit, the ambulance, medical and burial expenses of decedent totaling $910.06. They quote portions of the wrongful death statute dealing with damages to be awarded, 1941 Comp. § 24–103, reading:

"* * * and the jury in every such action may give such damages, compensatory and exemplary, as they shall deem fair and just, taking into

consideration the pecuniary injury or injuries resulting from such death to the surviving party or parties entitled to the judgment, or any interest therein, recovered in such action, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default."

The bills showing these expenses were introduced both by the plaintiff as administrator and by the third party plaintiff, Mountain States Mutual Casualty Company, a corporation, claiming by statutory assignment as the workmen's compensation insurer of New Mexico State Highway Department against any recovery to be awarded plaintiff. The basis of the claim of prejudice in this behalf is that under the wrongful death statute "the present worth of the life of deceased" presents the true measure of damages as a criterion, touching which expenses of the kind objected to could have no relevancy whatever. Cerrillos Coal R. Co. v. Deserant, 9 N.M. 49, 49 P. 807; Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540, and Henkel v. Hood, 49 N.M. 45, 156 P.2d 790, are cited by defendants as establishing the true measure of damages to be as above stated.

The answer of plaintiff as administrator to this claim of error is fourfold in its compass, three of which are procedural in nature and one, the last, on the merits. First, they say the error, if any, takes on the character of invited error of which defendants cannot avail themselves. It is next claimed that, though previously objecting to the admission in evidence of these items upon identification by Hodgkins, administrator, testifying in his own behalf as plaintiff, when they were again introduced by Mountain States Mutual Casualty Company as a part of its case, there was no objection on defendants' part. And for a third answer, it is said that the court's instructions having failed to submit the question of these items as the basis for an award, there was no request by defendants that they be disregarded by the jury in arriving at its verdict.

Finally, the all embracing answer is advanced by plaintiff, that the items are recoverable under a proper interpretation of the language found in the death by wrongful act statute, disclaiming at the same time that the verdict carries an allowance on account of any of them. Then, as if to clinch the claim there is no prejudice, plaintiff's counsel offer a remittitur of the judgment in the aggregate amount of these items, to cure any possible error arising from their admission.

■ Treating plaintiff's objections to this claim of prejudice somewhat contrary to the order of their listing above, we think there may be some basis to the first and third contentions, none at all to the second and the fourth, touching the merits of the

question, we find it unnecessary to pass upon. It is a fact that the defendants themselves brought the third party plaintiff, the highway department's workmen's compensation insurer, into the case. It is in its case alone that the questioned items could have undisputed relevancy. Plaintiff's counsel say the reason the insurer was brought in was one of strategy, to enable defense counsel to argue to the jury, as without challenge they assert was done, first that the insurer had paid all the bills which would no longer burden the heirs of deceased; and, next, that since the workmen's compensation act allowed only $12,-000 for death, no more than that amount should be allowed in the case before them. Having thus received the benefits "they expected from a joinder of the Insurance Company, they can not escape the consequences of their own act by now claiming that appellees could not introduce the items which the Mountain States Mutual Casualty Company were entitled to recover as payments on account of the death of Alick Morrison," etc., assert counsel for the plaintiff. In other words, they say defendants are "hoisted on their own petard." This argument is not altogether without force. It is too well established for dispute that a party litigant may not invite error and then take advantage of it. Heisch v. J. L. Bell & Co., 11 N.M. 523, 70 P. 572; Gonzales v. Sharp & Fellows Contracting Co., 48 N.M. 528, 153 P.2d

676; Harper v. Harper, 54 N.M. 194, 217 P.2d 857.

It is also true, as suggested by counsel for plaintiffs that the court failed to submit the question of these items to the jury and, certainly, no award in favor of either party plaintiff was made on account of them. The sole recovery carried in the verdict and in the judgment is the $45,-000 general award in favor of the plaintiff as administrator. We do not understand defense counsel to claim, however, inclusion of such items in the verdict and judgment but rather that their admission may have inflicted such prejudice as to induce a larger award in the general verdict. It is with respect to this understanding of their position that we now address ourselves.

Conceding, as we think the record fairly discloses, that the point has been properly raised below and that defendant did finally object to the admission of these items, when offered by third party plaintiff, relating the objection to their initial offer by plaintiff as administrator, we think the defendants' insistence that they were prejudiced is too weak to be made the basis for a reversal. The expenses incident to decedent's injuries, death and burial were no more than to be expected according to common understanding and it is too much to suppose a jury of intelligent men would not know this. It also strains our creduli-

ty to think there is anything connected with these items that would create prejudice in the mind of any juror of average experience and intelligence. The claim of error is altogether without merit and is denied.

While defendants' counsel argue that New Mexico cases such as Hogsett v. Hanna, supra, and Henkel v. Hood, supra, deny in their rationale recovery by a plaintiff in a death by wrongful act case expenses incident to the injury and death of a decedent, counsel for both parties agree the matter has never been expressly decided by this Court. Counsel for plaintiff, citing 25 C.J.S., Death, § 108, p. 1259, and an annotation in 94 A.L.R. 438, as well as McCullough v. W. H. Powell Lumber Co., 205 Mo.App. 15, 216 S.W. 803, and Cervillo v. Manhattan Oil Co., 226 Mo.App. 1090, 49 S.W.2d 183, assert such items are properly recoverable in this kind of case. They place strong reliance on the Missouri cases from which state our death by wrongful act statute was taken. McMullen v. Ursuline Order of Sisters, 56 N.M. 570, 246 P.2d 1052. Nevertheless, in view of the non-prejudicial character of this evidence, we find it unnecessary to enter upon a discussion of the propriety of its admission.

It is strongly urged upon us that the trial court erred in admitting in evidence over the objections of defendant Plaintiff's Exhibits 14 and 15 in proof of an experiment conducted by them tending to corroborate testimony of witness, Laddie Kurtz, that turning in his seat in cab of the pickup he was not only able to see the tank trailer following them but to give an estimate of its speed from the manner in which smoke from its diesel flowed back in a horizontal line from the mouth of its exhaust. The exhibits mentioned consisted of two photographs, taken from different positions and properly identified, of a pickup described as an exact counterpart of the one occupied by deceased at time of the accident with two fifty-gallon barrels or drums placed against the back of the truck's cab in positions described by witnesses as the same as the positions of two other barrels of like size and height on day of the accident. The witness mentioned had testified that looking back through the rear windows in the truck's cab he was able to see the tank trailer in a line of vision both between and over the barrels.

The chief, in fact, the sole objection urged below and repeated here is that the experiment which the photographs exemplifies fails to reflect the same conditions in the pickup as those obtaining at the time of the accident. The exact nature of defendants' objections to admission of the exhibits may best be understood by showing the colloquy between court and counsel at time of their offer. It proceeded as follows:

"Q. And you don't know whether this represents the same condition that the—that prevailed in that pickup at the time of that accident as far as the placement of those barrels? A. Not exactly, no, sir.

"Mr. Oman: Then we object to the introduction of this unless it is shown it is an exact replication of the conditions that prevailed there.

"Mr. Hughes: The plaintiff at this time offers in evidence, a photograph marked for purpose of identification as plaintiff's exhibit number 14, for the purpose of showing how far the barrel —a fifty-five or fifty gallon barrel will come up on the window of an identical pickup as the one involved in this accident. We offer it as plaintiff's exhibit number 14.

"Mr. Oman: If the Court please, we just renew our objection, that it doesn't truly represent the conditions that prevailed there. At least, they haven't shown that it did."
(Argument).

"The Court: This is only offered to show how high the barrels stood up from the body of the truck?

"Mr. Sherman: How high the barrels go up on the window.

"The Court: I understand it is not being offered as an exact replicate as at the time the accident took place?

"Mr. Sherman: That's correct.

"Mr. Oman: If the Court please, then we make one further objection, because there are three barrels in there and we don't know whether they are exactly the same size or not. As a matter of fact, it is difficult to determine from there, there were three barrels involved and only one barrels measured up."
(Argument).

"The Court: This would be limited to showing the high—the height of the barrels, not necessarily as to the exact replicate at the time of the accident, for that purpose only. For that purpose it will be admitted."

It is thus seen the gist of defendants' argument against admission is the claim that conditions obtaining in the pickup at the time were not sufficiently like those exemplified in the experiment to render the exhibits admissible. We can not agree with counsel in this contention. The two trucks were shown to be of the same model, three of a kind, one of which was that used in the experiment and the other one involved in the accident, all having been purchased by the highway department at the same time. The exact height of the two drums, both identical in size, placed against back of the truck's cab was measured by the straight or smooth side of one of those involved in the accident, likewise shown to be identical in size, and those used in the experiments

were testified to be of the same height and capacity.

In Erickson's Dairy Products Company v. Northwest Baker Ice Machine Company, 165 Or. 553, 109 P.2d 53, 55, a case relied on by defendants, we find practically the same objection as that made by defendants here to testimony and exhibits used in connection therewith and error was assigned on the ruling admitting them. The court in affirming the judgment of the trial court as correct had this to say:

"Evidence of an experiment is admissible if it is of such nature as to aid the jury in determining the issues of fact. Obviously, some experiments would tend towards confusion rather than enlightenment: 20 Am.Jur., Evidence, § 257. It is for the trial court in the exercise of its discretion to determine such preliminary question, and this court will not interfere unless there is an abuse thereof. No hard and fast rule can be announced as to the degree of similarity of conditions under which the experiment is to be made. It is plain, however, that the law does not require that the conditions be identical. It is sufficient if there is a substantial similarity of conditions."

See, also, annotations in 8 A.L.R. 18 and 85 A.L.R. 479; Leonard v. Henderson, 118 Vt. 29, 99 A.2d 698; Hackman v. Beckwith, Iowa, 64 N.W.2d 275, and Lobel

v. American Airlines, 2 Cir., 205 F.2d 927. Leonard v. Henderson, supra, presents facts very similar to those here present. Incidentally, there are two New Mexico cases that should not be overlooked. They are State v. Stewart, 30 N.M. 227, 231 P. 692, and Holloway v. Evans, 55 N.M. 601, 238 P. 457. While not in point, the rationale of each opinion lends support to the conclusion we reach in holding the trial court did not abuse its discretion in the respect here challenged.

The defendants urge as a further basis for reversal claimed error of the court in letting in evidence testimony as to the nature of the injuries which caused death, in view of the admission at the trial that such injuries were the cause of death. The theory of the objection is that, this being an action for death by wrongful act, in which the measure of damages is the present worth of the life of deceased, Cerrillos Coal R. Co. v. Deserant, supra, the nature and extent of decedent's injuries and what particular injury caused death could have no bearing whatever upon responsibility for the collision, or the present worth of his life. Hence, they say the only effect such testimony can have is to excite sympathy and bring about an excessive verdict.

We may better understand the trial court's ruling if we have a perspective of just how the question arose and the extent to which decedent's injuries were dwelt up-

on in testimony. The following appears in the transcript, to-wit:

"Q. All right. Now, calling your attention to the 10th of April of this year, did you have occasion to see him at that time? A. Yes.

"Q. And what were the circumstances under which you saw him? A. I was called to the emergency room of the Deming Ladies Hospital on the 10th of April at approximately 4:00 o'clock in the afternoon, to see Mr. Morrison in the emergency room.

"Q. And what was his condition?

"Mr. Oman: If the Court please, at this time we are willing to admit there is no question about the man dying as a result of the injuries sustained in this accident and if that's what they are going to prove by the doctor, we will admit it.

"Mr. Sherman: Very well, we will not need to question you further regarding that.

"Q. All right. Now, just one more question. Although the defense has admitted that the death occurred as a result of this accident, would you state just what the cause—just what Mr. Morrison died of? What injuries?

"Mr. Oman: Well, now, of course, if the Court please, we object to going into the injuries. That has nothing to do with a wrongful death case. If the death is admitted as a result of this accident, the statute clearly defines what the elements are in a wrongful death case and the extent of the man's injuries has nothing to do with this law suit. We don't know what they were and we don't know what he is after, but they are not admissible regardless of what he is after."

(The jury was excused and retired to the jury room while argument was conducted before the Court).

"The Court: I am going to overrule the objection.

"Mr. Whatley: We except.

"Q. (Mr. Sherman, continuing) Did you get that question, Doctor? A. Do you want me to describe his entire injuries, is that right? Or do you just want me to say which injury caused his death, or do you want—

"Q. Which injuries caused the death. A. Which injuries caused his death?

"Q. Yes. A. The cause of death in Mr. Morrison's case was due to the brain trauma, which—with multiple areas of brain hemorrhage. Do you want me to say why I think that?

"The Court: That's all. Let the lawyer ask the questions.

"Q. I will ask you how you determined that that was the cause of death? A. The cause of death was proven by an autopsy performed by Doctor W. A. Jones, neuro-surgeon of El Paso, Tex-

as, and myself, upon the body of the deceased at the mortuary in Deming, New Mexico."

It should be mentioned that on the pleadings as they stood at time of trial, the defendants were still denying the allegation in the complaint that decedent received injuries in the collision from which he died. It was not until the plaintiff began putting in evidence to sustain this allegation that the admission relied upon to foreclose proof of the fact was forthcoming. The plaintiff also reminds us that his Exhibit No. 16 was introduced into evidence without objection, being two crumpled hats in top of the cab of the truck identified by witness, Acker, from which the jury might infer one of the hats belonged to decedent and was on his head at time of collision. It thus had some tendency to enlighten the jury on conditions in cab of the truck immediately following the collision, a detail of the accident. And of like tenor, the nature and extent of decedent's injuries have some tendency, even if slight, to disclose the speed at which defendants' vehicle was moving as reflected by force of the impact at the moment it occurred, all of which have some bearing on the question of negligence.

We see nothing in the brief testimony on this subject calculated to excite sympathy or bias on the part of the jurors in plaintiff's favor. Death was an outstanding fact in the case. The jurors were apprised of it at once as indispensable to recovery.

The court heard argument on the question out of the presence of the jury and ruled admissible so much of the testimony touching the subject as appears hereinabove. Notwithstanding the fact that defendants complain of this ruling on the ground that it is calculated to produce an excessive verdict, yet they do not assign as error here that the verdict is excessive. The remarks of the Supreme Court of Oklahoma in disposing of a similar objection are not inept. It said:

"We think that, under the circumstances, the evidence was of some probative value, as it tended to prove one of the facts in controversy. 10 R.C.L. 927. Furthermore, as before stated, it is not contended that the verdict is excessive." Wray v. Ferris, 187 Okl. 428, 103 P.2d 942, 946, 128 A.L.R. 1079.

There may be circumstances under which it would be error to stress in testimony the nature and extent of a decedent's injuries in cases of this kind, especially in the face of a timely admission that death resulted from the injuries received, but we do not believe the facts here present show such a case. It was within the trial court's discretion to admit the testimony objected to and in so doing we see no abuse in the exercise thereof. 9 Blashfield Cyclopedia of Automobile Law and Practice (Pt. 2) 654, § 6197; Cunningham v. Spangler, 123 Pa.Super. 151, 186 A. 173; Louisville & Nashville Railroad Co. v. Parker, 223 Ala.

626, 138 So. 231. Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897; Clason v. Velguth, 168 Wash. 242, 11 P.2d 249.

In the last mentioned case the Supreme Court of Washington had this to say on a similar challenge to admissibility, to-wit:

"Disposing of another assignment of error it was proper, at least within the discretion of the court in our opinion, to allow witnesses who were at the scene of the accident to testify as to the extent of the injuries the decedent received, although the appellant admitted that the accident was fatal to the decedent." 168 Wash. 242, 11 P.2d 253.

The defendants also urge error in the trial court's refusal of two specially requested instructions, Nos. 6 and 7, submitted by them. No. 6 relates to the defense of contributory negligence as likewise does No. 7. Counsel complain that in refusing these instructions the trial court declined to submit one of their defenses. The plaintiff's answer to this contention is twofold. First, he says the defendants failed to plead contributory negligence, then, adding that, if they had, they would not have been entitled to an instruction on the subject because there was no evidence to support submission of the issue.

We are compelled to agree with plaintiff's counsel in both contentions. A careful examination of paragraphs 1 and 2 of the second defense satisfies us that defendants' plea there interposed was that of joint venture upon which subject they requested and received instructions from the court. Furthermore, eliminating the question of joint enterprise which the jury's negative answer to a special interrogatory disposed of, there is a total want of any evidence of contributory negligence on the part of the decedent. He was merely a passenger in the truck driven by another whose negligence, if any, under the circumstances here shown, could not be imputed to him.

Nor is there the slightest evidence that decedent possessed knowledge of any fact imposing a duty on him to warn the driver of the pickup of impending danger of which the latter was ignorant. Nevertheless, and in spite of the factors just stated, the trial court in one of its instructions did charge the jury that in the event they should find the decedent and driver of the truck were not engaged in a joint enterprise, as the jury did find, "still the duty was upon the deceased to use such care as an ordinarily prudent person would exercise for his own safety under the circumstances." The quoted language could only relate itself to the doctrine of contributory negligence.

Other errors, including the court's action in overruling defendants' motion for a new trial, are urged upon us. An examination of these claims of error shows them to be without merit. Accordingly, they are denied.

It follows from what has been said that the judgment of the trial court should be affirmed. It Will Be So Ordered.

McGHEE, C. J., and COMPTON, LUJAN and SEYMOUR, JJ., concur.