467 P.2d 5

**ANDERSON HAY AND GRAIN CO., Inc.,**
A Washington Corporation, Plain-
tiff-Appellant,

v.

Sam DUNN and Virgil Welch, d/b/a Ruidoso
Downs Concession, Defendant-Appellee.

No. 8951.

Supreme Court of New Mexico.

March 30, 1970.

Shipley, Durrett, Whorton & Conway,. Alamogordo, for plaintiff-appellant.

M. J. Clayburgh, Albuquerque, for de-fendant-appellee.

## OPINION

TACKETT, Justice.

This action was commenced in the District Court of Lincoln County, New Mexico, to recover $13,567.85 allegedly owed plaintiff by defendant Virgil Welch and Sam Dunn, doing business as Ruidoso Downs Concession, also known as Ruidoso Downs Feed Concession. The trial court awarded judgment against Welch and dismissed the complaint against Dunn. Plaintiff appeals.

The only issue before this court is whether Dunn was a partner in the operation of the Ruidoso Downs Feed Concession. The evidence reveals that Dunn was a partner by estoppel as a matter of law. The trial court found that Dunn was not a partner; however, such finding does not have sufficient support in the evidence.

The complaint alleged that Dunn and Welch were partners. Dunn answered, alleging that plaintiff knew Ruidoso Downs Feed Concession was a sole proprietorship operated by Welch, and that he and Welch were not partners. Welch filed an amended answer alleging that he and Dunn were full partners.

Appellant sells feed to race track concessions. In late 1967, the president of appellant company visited the officers of Lincoln Management, who controlled all the concessions at the Ruidoso race track, apparently in an effort to sell feed. In January 1968, Lincoln Management and Welch entered into a contract whereby Welch managed the feed concession and appellant dealt with Welch as manager. On May 22, 1968, Lincoln Management subleased the feed concession to Welch, who was described in the agreement as an independent contractor. Kenneth Newton, president of Lincoln Management, refused to sign the agreement unless Dunn guaranteed the note securing the sublease. Dunn had an interest in Lincoln Management. After signing the sublease contract, Dunn and Welch entered into a written agreement whereby Dunn, as co-signer of the note for $65,000, would have the sole right to maintain accounting records, inventory controls and accounts receivable. After execution of the sublease, Newton supposedly sent a letter to appellant (the receipt of which was denied) advising that Welch would be responsible for all debts incurred by the Ruidoso Downs Feed Concession. A bank account was opened in the name of Ruidoso Downs Feed Concession, and both Dunn and Welch were authorized to sign checks and make withdrawals from the capital account. For the year 1968, Welch filed a partnership income tax return.

Credit was extended by appellant on the strength of Dunn's financial responsibility, and appellant contacted Dunn for payments on the account. In April 1968, Dunn and Welch executed a hauling contract wherein both were designated as "parties of the second part," and the suppliers looked to Dunn as the responsible partner. The public conduct of both Dunn and Welch lead to the conclusion that they were partners, and Dunn and Welch allowed themselves to be so held out. Welch considered Dunn to be a partner, and Dunn, by his own admission, considered Welch to be a partner, as he stated to Kenneth Newton at the first meeting as a representative of the

feed concession, "at least I [Newton] didn't have a partner like Virgil Welch."

Section 66–1–16, N.M.S.A., 1953 Comp., is as follows:

"(1) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him or any one, as a partner in an existing partnership or with one [1] or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making representation or consenting to its being made.

"(a) When a partnership liability results, he is liable as though he were an actual member of the partnership.

"(b) When no partnership liability results, he is liable jointly with the other persons, if any, so consenting to the contract or representation as to incur liability, otherwise separately.

"(2) When a person has been thus represented to be a partner in an existing partnership, or with one [1] or more persons not actual partners, he is an agent of the persons consenting to such representation to bind them to the same extent and in the same manner as though he were a partner in fact, with respect to persons who rely upon the representation. Where all the members of the existing partnership consent to the representation, a partnership act or obligation results; but in all other cases it is the joint act or obligation of the person acting and the persons consenting to the representation."

Dunn, by his conduct, actions and words, furnishes substantial evidence that he and Welch were partners. Farmers and Mer-

chants Bank of Long Beach v. Kirk, 165 Cal.App.2d 470, 332 P.2d 131 (1958); Singleton v. Fuller, 118 Cal.App.2d 733, 259 P.2d 687 (1953). It is immaterial that the parties do not designate the relationship as a partnership, or realize that they are partners, for the intent may be implied from their acts.' In re Estate of Foreman, 269 Cal.App.2d 180, 74 Cal.Rptr. 699 (1969). Dunn's testimony alone and uncorroborated is not substantial evidence. We said in Galvan v. Miller, 79 N.M. 540, 445 P.2d 961 (1968), that substantial evidence is relevant evidence, acceptable to a reasonable mind.

■ If Dunn did not want to be considered or held out as a partner in the feed business, he should not have allowed himself to be so associated. He consented to being held out as a partner by his actions. Section 66–1–16, supra. Consent can be implied by conduct. Holding out as a partner may be construed from acts and conduct. 40 Am.Jur. Partnership, § 78 at 183–184; Miller v. Salabes, 225 Md. 53, 169 A.2d 671 (1961); McBriety v. Phillips, 180 Md. 569, 26 A.2d 400 (1942). When appellant demanded money from Dunn on account, Dunn never said he was not a partner. When payments were past due, appellant called Dunn on the telephone and Dunn would send a check. A reasonable conclusion to draw from such occurrences is that Dunn was the responsible partner. It is sufficient if the course of conduct is such as to induce a reasonable and prudent man to believe that which the conduct would imply. Crabbe v. Mires, 112 Cal. App.2d 456, 246 P.2d 991 (1952).

Dunn conducted himself so as to induce appellant to deal with him in the belief that he was a partner and, by so doing, created a partnership by estoppel. Sparks & Co., Inc. v. Hawks, 42 N.M. 636, 83 P.2d 981 (1938); Vlamis v. De Weese, 216 Md. 384, 140 A.2d 665 (1958).

The facts in the case before us are practically identical with those in Associated Piping & Engineering Co. v. Jones, 17 Cal.App.2d 107, 61 P.2d 536 (1936). There a financial backer was being held out as a partner by the creditors. One of the issues on appeal was "whether or not the acts and conduct of appellant Austin were sufficient to lead respondent to believe he was a copartner and assumed responsibility as such." When payments fell behind, the president would call appellant (Austin) by telephone, and Austin would send money. Austin told the president of the company not to worry because the business would work out. The court said Austin's conduct made him aware the company was relying on his "financial integrity" and thereby was holding him out as a partner. It was held that Austin's conduct and acts were sufficient to lead respondent to believe he was a copartner and assumed responsibility as such. See also, Kelley Island Lime & Transport Co. v. Masterson, 100 Tex. 38, 93 S.W. 427 (1906). Dunn's conduct is similar to Austin's which establishes him as a partner by estoppel, as there was no substantial evidence that appellant did not rely on Dunn being a partner when extending credit to the Ruidoso Downs Feed Concession. Goodpasture Grain & Milling Co. v. Buck, 77 N.M. 609, 426 P.2d 586 (1967); Davis v. Gilmore, 244 S.W.2d 671 (Tex.Civ.App.1951).

■ The statutory tests for partnership by estoppel require (1) credit must have been extended on the basis of partnership representations; or (2) that the alleged partner must have made or consented to representations being made in a public manner, whether or not such representations were actually communicated to the person extending credit. Gilbert v. Howard, 64 N.M. 200, 326 P.2d 1085 (1958). By these statutory tests, Dunn is a partner by estoppel.

The trial court erred in not so finding.

Further comment is unnecessary.

The case is reversed and remanded to the trial court with instructions to reinstate

it on the docket and enter a new judgment against Dunn and Welch, jointly and severally.

It is so ordered.

COMPTON and SISK, JJ., concur.