647 P.2d 409

**Harold C. DOTSON, Jr.,
Plaintiff-Appellee,**

v.

**James L. GRICE, George Gabaldon and
Lola Grice, Defendants-Appellants.**

**No. 13799.**

Supreme Court of New Mexico.

June 25, 1982.

Anthony J. Williams, Stephen K. Bowman, Belen, for defendants-appellants.

John R. Gerbracht, Socorro, for plaintiff-appellee.

## OPINION

PAYNE, Justice.

This case involves the specific performance of a contract to convey realty. The record title is in the names of three individuals, two holding it as community property with the third as their tenant in common. Only one of the individuals signed the contract. The trial court, applying the Uniform Partnership Act, §§ 54–1–1 through 54–1–43, N.M.S.A.1978, held that all three were bound by the conveyance and granted specific performance. We affirm.

In 1972, defendants-appellants James Grice and his wife, Lola, conveyed to defendant-appellant George Gabaldon an undivided one-half interest in certain real estate they owned as community property. Subsequently the land was subdivided for sale. In September 1979 James Grice and plaintiff Harold Dotson executed a purchase agreement covering two of the lots. Dotson made a downpayment of $5,000.00. Thereafter Gabaldon refused to approve the sale or execute the deeds and defendants refused to convey the property.

Dotson brought suit for specific performance against the Grices and Gabaldon. Lola Grice in her answer admitted that the conveyance was executed and that she was always willing to convey. At trial, she did not raise as an issue the accuracy of her answer or defend against or object to Dotson's allegations regarding the partnership

relationship. The trial court ordered specific performance after finding that all three defendants were associated in a partnership, that the actions of James Grice bound the partnership, and that equitable interest in the property had passed to Dotson.

Defendants argue that the trial court improperly applied the Uniform Partnership Act because: 1) the court did not find the realty to be partnership property, and could not have properly made such a finding; 2) there was not substantial evidence to support a finding that Lola Grice was a partner; 3) James Grice could not by his signature alone contract to convey his and Lola Grice's community interest in the realty; and 4) even if the realty were partnership property and Lola Grice's signature not required, James Grice could not bind the partnership to the contract.

■ We disagree with defendants' first argument, that the trial court should not have applied Section 54–1–10, N.M.S.A. 1978, which governs conveyances of partnership real property, because it failed to specifically find that the realty is partnership property. Where a proper judgment of the trial court depends on the finding of a particular material fact, such a finding will be implied from the entry of judgment favorable to plaintiff. *See Boone v. Smith*, 79 N.M. 614, 447 P.2d 23 (1968). Here, the trial court's application of the Uniform Partnership Act is dependent upon a finding of partnership property. The trial court's finding that the record title to the realty in question is in Gabaldon as tenant in common with the Grices, whose interest is held as community property, does not prevent our inferring a finding of partnership property. Partners may treat realty as partnership property without changing the record title to that of the partnership. *See, e.g.*, § 54–1–10(D), (E). We therefore infer from the judgment of the trial court that the court found that the realty is partnership property.

■ The trial court's finding that defendants were engaged, at the time of conveyance, in a partnership is supported by the record. In *Goodpasture Grain & Mill-*

*ing Co. v. Buck*, 77 N.M. 609, 426 P.2d 586 (1967), we affirmed the finding of the trial court that defendants were involved in a partnership business and thus were jointly and severally liable to the plaintiff. We held that a *pattern of conduct*, such as the sharing of profits and expenses of the business, filing of partnership tax forms, previous execution of contracts on behalf of the partnership, and control of a partnership bank account will suffice to show the creation of a partnership relationship even in the absence of a written agreement. Here, the lower court found a dividing of profits and losses, previous sales of subdivided lots by the defendants, filings of partnership tax forms, and references to each other as partners in their testimony.

■ Defendants' argument that insufficient evidence exists for finding Lola Grice in association with the partnership is incorrect. The lower court found a partnership based on the conduct described above. Even though Lola Grice could not be described as an active participant in partnership affairs, the record shows that she had long acquiesced in the conduct of her husband and Gabaldon as her co-partners. She also admitted her willingness to convey this property at all times and never protested the conveyance at trial.

■ The rule governing when individually held property becomes that of a partnership is found in *Adams v. Blumenshine*, 27 N.M. 643, 204 P. 66 (1922). Generally, the parties must agree to make the property a partnership asset. In *Adams*, we set forth some facts which would be persuasive in deciding this issue: the use of property for the partnership, the existence of a partnership bank account, deposits of proceeds from property into this partnership account, and the purchase of the property with partnership funds with the intent that it be used solely in the partnership business.

■ The record below supports the conclusion that the property was contributed to the partnership. *See also Perelli-Minetti v. Lanson*, 205 Cal. 642, 272 P. 573 (1928). There was a partnership bank account and

deposits were made into and out of this account, to the benefit of defendants. Defendants filed partnership income tax returns for six years, listing the partnership activity as "Real Estate, Investments and Rentals." Defendants had made previous sales of the kind made to plaintiff and reported the income on partnership tax returns. Mr. Grice was an agent for the partnership in those transactions.

■■■■ Once community property is contributed to a partnership, its status is not transmuted from community to separate or partnership property, as defendants claim. Although the community no longer has a right to the specific piece of property, *see* § 54–1–25(B)(5), N.M.S.A.1978, the community still has an interest. The community merely trades its interest in the specific asset for a community interest in the partnership. *See Kenworthy v. Hadden*, 86 Cal. App.3d 696, 151 Cal.Rptr. 169 (1978); *Rosenthal v. Rosenthal*, 240 Cal.App.2d 927, 50 Cal.Rptr. 385 (1966). This is not transmutation, requiring the transmuting spouse's intent and agreement to transmute. *See McCall v. McCall*, 2 Cal.App.2d 92, 37 P.2d 496 (1934).

■■■■ Because the community loses its interest in the specific property contributed to the partnership, Section 40–3–13, N.M.S.A.1978, which requires the joinder of both spouses in any conveyance of or contract to convey community realty, does not apply. *See Attaway v. Stanolind Oil & Gas Company*, 232 F.2d 790 (10th Cir. 1956). Once the specific property becomes partnership property, its conveyance is instead governed by Section 54–1–10.

Finally, defendants argue that James Grice acted without actual authority and therefore Gabaldon, as an undisclosed principal, is not bound by the purchase agreement. They note that in applying Section 54–1–10(D) the court relied on Section 54–1–9, which, they argue, "embrace[s] the agency doctrine of apparent authority." Defendants contend that the section is only applicable when the third party is relying on the apparent existence of a partnership and when the act of the partner is appar-

ently for carrying on the business of the partnership in the usual way. That was not the case here, because the trial court found that Dotson "did not rely on the authority of James L. Grice to act on behalf of any partnership, [because he] was unaware of the existence of any partnership and was further unaware of any relationship whatsoever between James L. Grice and George Gabaldon or of any interest in the property in question being held by George ·Gabaldon."

We do not agree with defendants' contentions. Section 54–1–10(D) states:

Where the title to real property is in the name of one or more of all of the partners, * * * a conveyance executed by a partner * * * in his own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under the provisions of [Section 54–1–9(A)].

Section 54–1–9(A) provides:

Every partner is an agent of the partnership for the purpose of its business, and the act of every partner * * * for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

Section 54–1–4(C) also provides that "[t]he law of agency shall apply under this act." Merely because Section 54–1–9(A) "embrace[s] the agency doctrine of apparent authority," which we do not here concede or decide, does not prevent Grice's binding the partnership under some other theory of an agent's authority.

■■■■ It has long been the law that every partner is the agent of the partnership for the purpose of its business, and that concept has been incorporated into the Uniform Partnership Act. *See* § 54–1–9(A). Here, Grice was acting as general agent for an undisclosed principal, the partnership. He testified that he acted in this case in accord-

ance with the partnership's usual practice, and that this was the first time that Gabaldon had not gone along with a deal he had made. Grice was authorized to conduct transactions in furtherance of the sale of the partnership's lots. The only limitation on Grice's authority was that Gabaldon had to consent to the sale price.

 "A general agent for an undisclosed principal authorized to conduct transactions subjects his principal to liability for acts done on his account, if usual or necessary in such transactions, although forbidden by the principal to do them." Restatement (Second) of Agency § 194 (1958). This rule is "applicable to cases in which the agent has neither authority or apparent authority and acts disobediently or ignorantly on account of the principal," and illustrates the agent's inherent power to act, which derives "wholly from his relation with the principal." Id. § 161 comment a, at 378, 379. Because a partner's status as agent for the partnership flows from his status as a partner, see Meehan v. Valentine, 145 U.S. 611, 623, 12 S.Ct. 972, 974, 36 L.Ed. 835 (1892), his authority is also an inherent authority. Grice's act here was done on the partnership's account, in the usual way, even though it was done without Gabaldon's consent. Therefore it bound the partnership.

We affirm the trial court's holding that a partnership did exist among the defendants and that James Grice acted as an agent for such partnership, effectively conveying the individual interests of co-defendants. The trial court properly applied Section 54–1–10(D). We therefore affirm the trial court's award of specific performance.

IT IS SO ORDERED.

EASLEY, C. J., and SOSA, Senior Justice, concur.