728 P.2d 447

**NICHOLS CORPORATION, a New Mexico corporation, and the State of New Mexico, for the Use of Nichols Corporation, Plaintiffs-Appellees,**

v.

**BILL STUCKMAN CONSTRUCTION, INC., and American Insurance Company, Defendants-Appellants.**

**No. 15656.**

Supreme Court of New Mexico.

Oct. 29, 1986.

Rehearing Denied Dec. 2, 1986.

**38**

Sutin, Thayer & Browne, Jay D. Hertz, Philip R. Schichtel, Alburquerque, for plaintiffs-appellees.

Poole, Tinnin & Martin, Douglas Seegmiller, Judy K. Kelley, Robert C. Poole, James R. Scarantino, Albuquerque, for defendants-appellants.

## OPINION

FEDERICI, Justice.

Nichols Corporation (appellee) filed suit in the District Court of Valencia County naming as defendants A.J. Mills (Mills), d/b/a A.J. Mills Construction Co. (Mills Construction), d/b/a Molino and Company (Molino), Bill Stuckman Construction Company, Inc. (Stuckman) and American Insurance Company (American) (appellants). The jury found in favor of Nichols Corporation and judgment was entered accordingly. Stuckman and American appeal. We affirm.

Stuckman was the general contractor for the Wastewater Treatment Plant Improvement Project in Lovington, New Mexico (Project). Appellee alleged in its complaint that prior to April 10, 1981, Mills Construction assumed a subcontract held by Chava & Company calling for earth moving and excavation on the Project. On April 10, 1981, Mills Construction and appellee signed a written agreement whereby appellee agreed to furnish financial assistance to Mills Construction for expenses to be incurred in performing the subcontract work. In return Mills agreed to reimburse appellee each month upon receipt of monthly estimate payments from Stuckman. Appellee was to receive "thirty percent of any and all profits, determined after deducting operating expenses * * *. Upon the completion of said Project, Nichols Corporation will receive 30% of any profits from sums held in retainage." The record on appeal

indicates the "[p]rofits were to include proceeds from the sale of crushed material and fill dirt removed from the [project] site." Appellee and Mills had set up an independent operation on land adjacent to the Project. It involved producing crushed material and fill dirt from waste excavated from the Project to be sold to other construction projects. It was not part of the Project.

Appellee further alleged in its complaint that for a time Mills reimbursed appellee in accordance with their April 1981 contract. The payments were made by checks drawn on the Molino bank account. The Molino account was a joint account of Mills and appellee and either Mills or Nichols could draw against the full balance. Nichols testified the account was opened with his money as a form of escrow to ensure control over the Project's proceeds. The complaint alleged that Mills ceased payments to appellee in June 1981 and failed to account for profits. In August 1981 appellee terminated the April agreement and brought this action.

Appellee sued Stuckman and American under two theories. First, appellee claimed to be a third party beneficiary of the Stuckman-Mills subcontract. Second, pursuant to NMSA 1978, Sections 13–4–18 and –19 (Repl.Pamp.1985) (Little Miller Act), appellee sought relief against the performance and payment bond executed by American seeking payment for equipment, materials, and financial services allegedly used on the project.

Default judgment for nonappearance was entered on April 11, 1983 against Mills in favor of appellee. At the outset of the Nichols-Stuckman trial in May 1984 it was brought to the court's attention that a default judgment as to Stuckman's cross-claim against Mills had never been entered. The trial judge, pursuant to motion, again granted default judgment against Mills for nonappearance.

Stuckman counterclaimed against appellee alleging that Mills and appellee were partners or joint venturers for performing

the subcontract work on the Project and for the crushing operation. Further that Mills defaulted on the subcontract because appellee had stopped providing money to Mills. As a result and to complete the Project, Mills and Stuckman agreed in writing that Stuckman would pay Mills' expenses and charge the payments against the remaining subcontract proceeds and retainage as default damages. Stuckman sought to hold appellee, as a partner or joint venturer of Mills, jointly and severally liable for the expenses Stuckman incurred on the Project as a result of Mills' default.

The jury found by special interrogatory that appellee was a subcontractor of Mills and thus a sub-subcontractor of Stuckman and awarded appellee $125,073.04 against Stuckman and American. Stuckman was awarded nothing on its counterclaim against appellee. This appeal followed.

Appellants contend on appeal that the following are prejudicial and reversible errors committed by the trial court:

1. The exclusion of the deposition testimony of Mills;

2. Refusing to instruct and in improperly instructing the jury in the law of partnership and joint ventures;

3. Permitting parol evidence to contradict the terms of a written agreement in violation of the parol evidence rule;

4. Failure to instruct the jury on Stuckman's and American's defense that the alleged Mills-Nichols sub-subcontract was unenforceable because it had not been approved as required by the Stuckman-Mills subcontract;

5. The determination that Nichols' testimony was competent evidence as to the reasonable value of labor and materials actually used on the Project;

6. Incorrectly instructing the jury on damages under the Little Miller Act.

**Issue 1.**

■ Appellants argue the exclusion of Mills' deposition was prejudicial and reversible error.

We find appellants have failed to preserve the issue for appeal. An offer of proof is essential to preserve error where evidence has been excluded. *Williams v. Yellow Checker Cab Co.*, 77 N.M. 747, 427 P.2d 261 (1967). For the exclusion of the evidence to be error, the substance of the evidence must be made known to the trial court by offer or must be apparent from the context in which questions were asked. NMSA 1978, Evid.R. 103(a)(2) (Repl.Pamp. 1983).

The record discloses that appellants offered only excerpts of Mill's deposition which were pertinent to his residence as part of their effort to demonstrate Mills' unavailability. The record does not show that appellants otherwise attempted to make the substance of the deposition known to the trial judge. Thus, appellants have not met their burden in order to preserve the issue for appellate review.

**Issue 2.**

■ Appellants argue the trial court's refusal to instruct and its improper instruction to the jury on the law of partnership and joint venture was prejudicial and reversible error. Appellants also objected to Special Interrogatory 1 as prejudicial in that it "effectively instructed the jury to disregard [appellants'] principal defense that Nichols and Mills were partners."

As to appellants' challenge to the special interrogatory, this Court notes that Jury Instruction 4 stated, in pertinent part, "if Nichols Corporation was a partner or joint venturer of A.J. Mills, then any payment made by Bill Stuckman Construction, Inc. to A.J. Mills was a payment to the partnership or joint venture." As appellants acknowledge in their reply brief, all instructions must be read and considered together and when so considered they must fairly present the issues and the law applicable thereto. *Williams v. Vandenhoven*, 82 N.M. 352, 482 P.2d 55 (1971). We conclude that any error which may have existed in the special interrogatory was corrected when the court gave Jury Instruction 4.

As to the tendered instructions refused and those instructions given on the law of

partnership and joint venture, NMSA 1978, Civ.P.Rule 51(I) (Repl.Pamp.1980) provides:

> For the preservation of any error in the charge, objection must be made to any instruction given, whether UJI or not; or, in case of a failure to instruct on any point of law, a correct instruction must be tendered, before retirement of the jury. Reasonable opportunity shall be afforded counsel so to object or tender instructions.

■ Appellee argues that pursuant to Rule 51(I), no appellate issue exists concerning the instructions given on partnerships because appellants' objections were not on the record until six weeks after the verdict was returned and therefore the issue was not preserved. Further that Rule 51(I) requires that error in jury instructions be made known to the trial court and placed in the record before the jury retires in order to preserve error. *City of Albuquerque v. Ackerman*, 82 N.M. 360, 482 P.2d 63 (1971); *Baros v. Kazmierczwk*, 68 N.M. 421, 362 P.2d 798 (1961). The purpose of the rule is to give the trial court an opportunity to correct any error before the jury retires to deliberate. *Ackerman; Hamel v. Winkworth*, 102 N.M. 133, 692 P.2d 58 (Ct.App.1984).

Appellants acknowledge the above principles but submit that due to "exceptional circumstances" in the present case they should not be held to have waived their objections. In the present case, there was "extensive argument" on tendered jury instructions in the presence of the trial judge. However, the proceeding was not recorded. Appellants argue that they assumed it was being recorded because the court reporter entered periodically and appeared to be adjusting the recorder and they first learned it was not being recorded after the instructions were settled. The record verifies appellants' statement that, when the verdict was returned, the trial judge told counsel they could return later to place objections to the instructions in the record. Counsel for appellee did not then object to the proposed subsequent proceeding on the grounds of Rule 51(I) and the

record indicates counsel for appellee expressed his intention to participate in the later proceeding. Counsel for appellee first objected to the subsequent recording of objections at that later proceeding. Appellee now relies on Rule 51(I) to argue that the issue was not properly preserved. As to appellee's Rule 51(I) argument, it is well established that a "litigant may not invite error and then take advantage of it." *McCauley v. Ray*, 80 N.M. 171, 176, 453 P.2d 192, 197 (1968) (quoting *Hodgkins v. Christopher*, 58 N.M. 637, 274 P.2d 153 (1954)).

We find that the intended purpose of Rule 51(I) was satisfied in this case. The trial judge was alerted to any error in the instructions and had the opportunity to correct any error prior to retirement of the jury by virtue of his participation in the "extensive argument" both parties agree occurred in settling the jury instructions. This is true notwithstanding the failure to record the discussion. The issue of erroneous instructions was preserved. Nonetheless, we find that the instructions given on partnership, when taken as a whole, properly submitted the issues to the jury. The trial court adequately instructed the jury on the issue and law of partnership and joint ventures.

As to appellants' allegation of error in the trial court's refusal to give certain other requested instructions, this Court has previously held that it is not error to deny requested instructions when the instructions given adequately cover the applicable law. *Kirk Co. v. Ashcraft*, 101 N.M. 462, 684 P.2d 1127 (1984); *Hudson v. Otero*, 80 N.M. 668, 459 P.2d 830 (1969). In the present case the trial court did not commit error in refusing appellants' requested instructions.

**Issue 3.**

■ Appellants also argue that the admission of Nichols' testimony violated the parol evidence rule because that rule bars evidence which varies or contradicts a written agreement even where one party to the lawsuit is a "stranger" to the agreement, at least where the obligations and relation-

ships of the parties under the agreement are at issue.

We need not decide whether the parol evidence rule was violated in this case by the admission of Nichols' testimony of an antecedent oral agreement with reference to his contractual relationship with Mills. Sufficient evidence existed, other than Nichols' testimony, to support the jury finding that Nichols was a subcontractor of Mills and thus a sub-subcontractor of Stuckman. *Clovis National Bank v. Harmon,* 102 N.M. 166, 692 P.2d 1315 (1984).

**Issue 4.**

■ Appellants allege the trial court erred in failing to instruct the jury on their defense that the alleged sub-subcontract of Mills-Nichols was unenforceable because it had not been approved by Stuckman in accordance with the earlier Stuckman-Mills subcontract.

We hold that the trial court did not err in failing to give appellants' requested instructions that the Mills-Nichols agreement was unenforceable. Such instruction would have deprived appellee of its statutory protection under the Little Miller Act, Sections 13–4–18 and –19.

■ This Court has previously determined that the legislative intent in enacting Sections 13–4–18 and –19 was to provide a remedy equivalent to that of a materialmen's lien under NMSA 1978, Section 48–2–2 where, as here, no such lien would attach because the project is a government project. Thus, the Legislature has recognized the need to protect all those who have input into a government construction project. *State ex rel. W.M. Carroll & Co. v. K.L. House Construction Co.,* 99 N.M. 186, 656 P.2d 236 (1982). Third tier suppliers of materials to government construction projects are entitled to protection under New Mexico's Little Miller Act. *Id.*

**Issue 5.**

■ Appellants allege that the trial court erred in determining that Nichols' testimony as to damages was competent evidence of the reasonable value of labor and materials actually used on the Project. They submit that Nichols' testimony was nothing more than conjecture and guesswork because of the undisputed fact that he was only at the Project site one time. Further, that his testimony based on long distance telephone conversations with the Project foreman and his testimony based on business records did not constitute competent evidence to enable the jury to determine damages with reasonable certainty and accuracy.

The record shows that Nichols was an officer of Nichols Corporation, signed equipment rental agreements and checks, reviewed logs and records, and had daily telephone contact with personnel on the Project site. The admission of evidence is largely within the discretion of the trial court. There is substantial evidence in the record to support the findings and conclusions of the trial judge. *Kirk Co. v. Ashcraft; Matter of Ferrill,* 97 N.M. 383, 640 P.2d 489 (Ct.App.1981).

**Issue 6.**

Appellants argue that the trial court incorrectly and prejudicially instructed the jury on damages recoverable under the Little Miller Act because "the jury should have been instructed that repairs in the nature of replacement for capital could not be recovered." In point of fact, Jury Instruction 29 on the measure of damages stated, in pertinent part, "[t]his does not include labor or materials consumed or used on other projects, or the cost of major repairs to equipment which will benefit the owner of the equipment on other projects." We find appellants' contention to be without merit.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

RIORDAN, C.J., and STOWERS, J., concur.

SOSA, Senior J., and WALTERS, J., dissent.

WALTERS, Justice (dissenting); SOSA, Senior Justice (concurring in dissent).

I dissent from the majority's opinion because the record does not support the trial court's submission of the partnership issue to the jury. *See,* NMSA 1978, Civ.P.R. 50 (Repl.Pamp.1980); *Owen v. Burn Construction Co.,* 90 N.M. 297, 563 P.2d 91 (1977); *State Farm Fire and Casualty Co. v. Price,* 101 N.M. 438, 684 P.2d 524 (Ct. App.), *cert. denied,* 101 N.M. 362, 683 P.2d 44 (1984). I am persuaded by Stuckman's basic contention that had proper instructions been given, no reasonable jury could have concluded under the evidence presented in this case that Nichols was Mills's subcontractor. The trial court erred in twice refusing Stuckman's request for a ruling that Mills and Nichols were partners or joint venturers as a matter of law. This, in conjunction with the incomplete and erroneous jury instructions, require that this case be reversed and remanded for trial on Stuckman's counterclaim. *Cf. Kinney v. Luther,* 97 N.M. 475, 641 P.2d 506 (1982).

## I.

NMSA 1978, § 54-1-6, defines a partnership as, "an association of two or more persons to carry on as co-owners a business for profit." In the absence of an express agreement, a pattern of conduct, including sharing of profits and expenses of the business, execution of contracts on behalf of the business, and control of the partnership bank account, will suffice to show creation of a partnership relationship. *Dotson v. Grice,* 98 N.M. 207, 647 P.2d 409 (1982).

A joint venture has been held to include the following elements: (1) a community of interest to perform a common purpose; (2) a joint proprietary interest in the subject matter; (3) a mutual right to control; (4) a right to share in the profits; and (5) a duty to share in the losses. *Cooper v. Curry,* 92 N.M. 417, 421, 589 P.2d 201, 205 (Ct. App.), *cert. quashed,* 92 N.M. 353, 588 P.2d 554 (1978).

Intent to create a partnership or joint venture may be implied from the parties' conduct; therefore, it is immaterial that the parties do not designate their relationship as a partnership or joint venture, or even realize that they are partners or joint venturers. *Anderson Hay and Grain Co. v. Dunn,* 81 N.M. 339, 467 P.2d 5 (1970).

The facts in this case demonstrate that the Mills-Nichols business arrangement satisfied the legal definition of both a partnership and a joint venture.

Early in 1981, Mills was an employee and consultant of Chava & Co. Nichols, dealing through Mills, had supplied financial assistance to Chava & Co. on other projects. As shown by Nichols's annual audit exhibits, these contracts with Chava were treated by Nichols's accountant as "joint ventures, with Nichols as the financing arm." In the spring of 1981, Mills sought to acquire Chava's subcontract with Stuckman on the Lovington project. At that time, Mills requested that Nichols provide to Mills the same type of financial assistance which he had supplied to Chava in the past, and Nichols agreed to do so.

Nichols and Mills established a bank account in the name of "Molino & Co." Nichols testified that the account was to serve as a depository for Stuckman's monthly estimate payments to Mills, and to give Nichols sufficient control to assure Nichols that he would be reimbursed for his expenses on the Lovington project. The evidence disclosed that Nichols endorsed checks for Mills, and signed most of the checks that were drawn on the Molino account.

At trial, Nichols testified that he and Mills expected only a 1-to-2 percent profit on the subcontract, but that they were planning to make their profit by crushing and selling the excavated material. The record reflects that funds from the Molino account were used to pay expenses for both the Chava subcontract and the crushing operation, and that both the crushing expenses and subcontract expenses were charged to a single account on Nichols Corporation's books.

There was other reinforcing evidence of partnership or joint venture in that Nichols gave Mills a Nichols Corporation credit card to use for travel, food, lodging and other business-related expenses. Nichols authorized Mills to incur debts in the name of the Nichols Corporation for equipment repairs. At Mills's request, Nichols executed an equipment lease in the name of "Molino & Co.," and paid freight charges for transporting equipment to the job site. Mills, on the other hand, supplied fuel for both the excavation and crushing operation, supplied equipment for excavation, and paid the rent on the crusher and other excavating machines. While Mills never billed Nichols for any of those items, most of those expenses were paid with checks signed by Nichols and drawn on the Molino account.

Nichols testified that he retained exclusive control of excavation, while Mills retained exclusive control of sludge pumping, demolition and the crushing operation. Delegation of control is permissible between joint venturers. *Fullerton v. Kaune,* 72 N.M. 201, 382 P.2d 529 (1963). Nichols admitted that in many instances, he and Mills jointly decided how and what expenses were to be incurred on both the subcontract and the crushing operation projects. They continuously made a joint decision whether to use Molino funds to pay operational expenses.

The evidence indisputably establishes that as far as Mills and Nichols were concerned, the Chava subcontract, the crushing operation, and the Molino account were inseparable components of a single venture or enterprise. Just as clearly, the elements of a joint venture, as articulated in *Cooper,* were fully shown. Accordingly, the trial court erred in submitting the partnership issue to the jury. *Owen v. Burn Construction Co.*

## II.

Even if evidence of partnership or joint venture were not patently clear, we should remand on the basis of error in the jury instructions and the special interrogatory relating to a partnership or joint venture. *Kinney v. Luther.*

Instruction 12 told the jury, in essence, that an essential element in the creation of a partnership is the specific intent to create the partnership. That statement is contrary to *Anderson Hay and Grain Co.,* which unequivocally decided that "intent may be implied from ... acts." *Id.* 81 N.M. at 341, 467 P.2d at 7.

The trial court also erred in refusing defendant's requested instruction that a partnership or joint venture may be created or implied by the conduct of the parties. That requested instruction is supported by *Dotson v. Grice* and *Anderson Hay and Grain Co.* Refusal to give the instruction was particularly prejudicial to the defendant in light of the language in instruction 12.

Additionally, because Instruction 12 advised that partners have a joint right of management and control, it was error to refuse another of defendant's requested instructions that the jury be told that joint venturers may delegate responsibility and control between themselves. *See Fullerton v. Kaune.*

The most glaring error is found in special interrogatory No. 1. There the jury was instructed that if Nichols's relationship to Mills was anything other than that of a lender, and Nichols had not been paid in full, Nichols could recover on the bond. Neither this interrogatory nor the instructions which preceded it told the jury that if Mills and Nichols were partners or joint venturers, then payment to Mills was payment to Nichols. *See* NMSA 1978, § 54-1-8(A). The record contains overwhelming evidence that Mills and Nichols were partners or joint venturers on the Lovington project.

Stuckman's estimate payments to Mills (*i.e.,* payments to the partnership or joint venture and deposited in the Molino account), exceeded Nichols's expenses; consequently, Nichols had no cause of action under Little Miller Act. *See* NMSA 1978, §§ 13-4-18 to -19 (Repl.Pamp.1985).

For the above stated reasons, this case should be reversed and remanded for a trial on Stuckman's counterclaim. The majority concluding otherwise, I respectfully dissent.

SOSA, Senior J., concurs.