787 P.2d 821

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Samuel Edward WILSON,
Defendant–Appellant.**

No. 18204.

Supreme Court of New Mexico.

Feb. 14, 1990.

Jacqueline Robins, Chief Public Defender, Stephen D. Aarons and P. Jeffrey Jones, Asst. Appellant Defenders, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SOSA, Chief Justice.

Defendant-appellant, Samuel Edward Wilson (Wilson), was convicted pursuant to a jury verdict of first degree murder contrary to NMSA 1978, Section 30–2–1(A) (Repl.Pamp.1984) and conspiracy to commit murder contrary to NMSA 1978, Section 30–28–2(A) (Repl.Pamp.1984). The jury also found the aggravating circumstance of murder for hire. Wilson was sentenced to life imprisonment for first degree murder, and nine years with two years mandatory parole for conspiracy to commit murder, with the sentences set to run concurrently.

The State presented evidence that Wilson hired James Smith and Maurice Lee Smith, brothers, to kill the victim, the husband of a woman whom Wilson wanted to marry. Testimony at trial showed that Wilson provided a weapon, told the Smith brothers on which night to kill the victim and the method and manner of killing him, and to take money from the scene of the crime. Wilson points to various inconsistencies in this testimony and to the prosecutor's admission that the State's case contained such inconsistencies. After he was arrested, James Smith told police that Wilson had not been involved in the killing. The guns used in the murder were found on property owned by the Smith family. Later, however, James Smith told investigators that Wilson promised to pay him and his brother to kill the victim.

## JUROR RECUSAL

During voir dire of the prospective jury, one juror stated in open court that an upcoming religious holiday, Yom Kippur, might prevent him from being able to attend to his jury duties every day of the trial. Prior to the parties' counsel asserting challenges to the venire, and after the prospective juror had spoken with the trial judge in chambers about his possible conflict, the following exchange took place:

[Court]: One issue that I'd like to bring up, and I failed to go over this with [the juror]. He did indicate two Jewish holidays next week: Monday would not be a problem but Wednesday would be a problem. I don't know if we want to bring him in to see if he would refuse to serve or that if he had to sit in court on Wednesday if that would cause him any problems.

[Prosecutor]: I asked him that and * * *.

[Court]: Oh, did you? Oh, you asked him and he said it would not?

[Prosecutor]: Yes.

[Court]: O.K., I'm sorry. I did not hear then.

[Defense Counsel]: We have no challenges for cause.

[Court]: That's fine, let's bring the jurors in.

The prospective juror at issue was chosen. On the fourteenth day of trial, he sent another note (his third note) to the trial judge restating his anxiety about serving the following day, Yom Kippur. The trial judge met with the juror in chambers, out of the presence of counsel for either party, came back into court and announced that she was excusing the juror, and appointed an alternate juror to sit in the excused juror's place for the remainder of the trial.

After the judge's first in-chambers discussion with the juror, she stated to the parties and counsel what had been discussed. Prior to the second meeting in chambers, the juror had sent the judge a second note, to which the judge did not respond. Following his third note, the day before Yom Kippur, the judge met with the juror the second time and asked him if he could serve at least half a day, but he answered that it would be impossible. In his affidavit submitted after trial, the juror also testified, "During my two meetings with Judge Maes, neither the prosecution nor the defense attorneys were present."

He also testified, "[I]t is unthinkable for me to devote myself to any other pursuits on Yom Kippur than fasting, prayer and contemplation."

Prior to the judge's second in-chambers discussion with the juror, the following exchange took place in open court:

[Court]: [The juror] has again raised his concern about tomorrow. Where are we as far as defendant * * *.

[Defense Counsel]: There are two short witnesses * * *.

\* \* \* \* \* \*

I think that * * * we could easily finish testimony within * * * an hour, or two hours, I guess * * *. But we could do jury instructions tomorrow, and, I don't know, whatever the court feels is the proper thing to do.

No objection was raised to the juror's dismissal until Wilson's counsel filed a motion for new trial following the verdict, nor was any objection raised to the judge's consulting with the juror outside of the presence of the attorneys for the parties.

## WILSON'S ALIASES AND HIS PRIOR MILITARY CONVICTIONS

Prior to trial, Wilson filed a "Motion in Limine About Aliases" in which he asked the court to "[r]efer to defendant during proceedings before the jury only as Ed Wilson[,]" and to "[r]equire that the prosecution, through its argument and witnesses, so refer to defendant." The court granted this motion. Wilson also filed a "Motion to Exclude All References to Defendant's Prior Convictions," which read, in pertinent part, as follows:

1.  On two occasions more than ten years ago, defendant was convicted by military courts-martial of absenses [sic] without leave.

2.  These convictions equate to misdemeanor offenses.

\* \* \* \* \* \*

Therefore defendant requests that the court prohibit the prosecutor from making any reference to this past con-

viction, and to direct witnesses to follow this ruling.

The court granted this motion also.

On cross-examination of a State witness, the following exchange took place:

[Defense Counsel]: Now officer, that manslaughter charge that you brought up, you had an opportunity to check that, didn't you?

[Witness]: Yes, sir. I did.

\* \* \* \* \* \*

[Defense Counsel]: Isn't it a fact that you found out that indeed there was no manslaughter charge for Mr. Wilson?

[Witness]: That is true, sir.

[Defense Counsel]: As a matter of fact, there are no felonies for Mr. Wilson— felony convictions for Mr. Wilson?

[Witness]: Can we have—clarification?

[Defense Counsel]: A conviction is when you get convicted for a felony?

[Witness]: The conflict that I have is there was a special court martial and a special court martial through the military judicial system would be the same as a felony through the civilian system.

The subject of manslaughter had been elicited on direct examination. The Smith brothers had told the witness they felt threatened by Wilson to kill the victim because of Wilson's reputation for having committed manslaughter in Texas. The court allowed questioning about this matter. Following the witness' response equating a court martial conviction with a "felony through the civilian system," Wilson's counsel asked the court to take judicial notice that Wilson's court martial conviction of "AWOL" was a misdemeanor. The court did so. Defense counsel did not ask the court to admonish the jury on this point. After a recess, the prosecutor asked the court for permission to inquire on re-direct examination into Wilson's military convictions. Wilson's counsel then moved for a mistrial, or in the alternative, an admonition to the jury not to consider the military conviction as a felony conviction. The court ruled that the prosecutor could not inquire on re-direct into Wilson's military

conviction. It denied the motion for mistrial, and did not admonish the jury as requested.

Concerning the court's order disallowing testimony on any aliases Wilson may have used, the following exchange occurred on cross-examination of Wilson by the prosecutor:

[Prosecutor]: Now, you testified that the reason you put Ed Wilson to Samuel E. Wilson was just something you decided to do?

[Wilson]: No, sir.

[Prosecutor]: What was the purpose of it then?

[Wilson]: Like I said, at one time [officials at the department of motor vehicles] may ask you for your driver's license for I.D. and the next time they won't. "Ed" is just natural for me. I've gone by Ed all my life, since I was a little feller.

[Prosecutor]: You've never gone by any other name?

[Wilson]: Yes sir.

[Prosecutor]: What was that?

[Wilson]: John Edward Goodloe.

[Prosecutor]: Why did you go under that name?

[Wilson]: Because I didn't want to go back to Vietnam.

[Prosecutor]: You were finally discharged as a deserter?

At this point Wilson's counsel objected. The objection was overruled. The court previously had allowed the prosecutor to inquire into several different names Wilson had used on his vehicle registration forms.

## JURY INSTRUCTION ON FIRST DEGREE MURDER

The court instructed the jury on first degree murder, in pertinent part, as follows:

For you to find the defendant guilty of first degree murder * * * the state must prove * * * each of the following elements of the crime:

1. The defendant had [the victim] killed;

2. The killing was with the deliberate intention to take away the life of [the victim] * * *.

This instruction was the same as that found in the relevant uniform jury instruction, SCRA 1986, 14–201, except that in the latter, paragraph number one reads, "The defendant killed [the victim]." Wilson's counsel had asked the court to instruct the jury verbatim from SCRA 1986, 14–201, and then add an instruction on aiding and abetting, to the effect that:

1. The defendant intended that the crime be committed;

2. The crime was committed;

3. The defendant helped, encouraged or caused the crime to be committed.

This second tendered instruction is the same as uniform instruction, SCRA 1986, 14–2822. The court refused both tendered instructions and read its own as quoted above.

## ISSUES RAISED ON APPEAL

On appeal, Wilson asserts the following errors:

I. The trial judge's in-chambers communications with the eventually dismissed juror deprived Wilson of due process, equal protection and a fair trial.

II. The prosecutor's inquiry into Wilson's prior military conviction and his use of different names in referring to Wilson deprived Wilson of due process, equal protection and a fair trial.

III. The trial court's alteration of the uniform jury instruction, SCRA 1986, 14–201, by using the words "had [the victim] killed" instead of the words "killed [the victim]," and the court's refusal to read the uniform jury instruction, SCRA 1986, 14–2822, deprived Wilson of due process, equal protection and a fair trial.

IV. Upon the evidence presented at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

## OUR HOLDING ON APPEAL

For the reasons stated herein, we reverse the judgment and sentence and remand the case for a new trial. Before discussing the points outlined above as Roman numerals I–IV, we first discuss an issue not raised in Wilson's brief.

On oral argument, we learned that the trial court had made no record, before the jury began its deliberations, of any objection to the court's rejection of Wilson's tendered instruction on aiding and abetting. Instead, the court reconstructed the record on this issue after the jury had retired. Although Wilson did not raise this point as error in either the docketing statement or in his brief, nonetheless we review the trial court's actions in order to determine if they constitute fundamental error. As we have held previously,

> Errors not specifically objected to at trial may be reviewed by this Court if they concern:
>
> jurisdictional questions or questions involving:
>
> (a) general public interest;
>
> (b) fundamental rights of a party; or
>
> (c) facts or circumstances occurring or arising, or first becoming known after the trial court lost jurisdiction.

*State v. Martin,* 101 N.M. 595, 601, 686 P.2d 937, 943 (1984); *DesGeorges v. Grainger,* 76 N.M. 52, 59, 412 P.2d 6, 10–11 (1966). In the present case, the trial court's failure to offer defense counsel an opportunity to object on the record to the court's rejection of the tendered instruction on aiding and abetting, before the jury began its deliberations, when weighed together with the errors discussed below, deprived Wilson of a fair trial. SCRA 1986, 5–608(D) provides:

> [F]or the preservation of error in the charge, objection to any instruction given must be sufficient to alert the mind of the court to the claimed vice therein, or, in case of failure to instruct on any issue, a correct written instruction must be tendered before the jury is instructed. *Before the jury is instructed, reasonable opportunity shall be afforded counsel so as to object or tender instructions, on the record and in the presence of the court.*

(Emphasis added.)

As we have stated elsewhere, "The purpose of [such a] rule is to give the trial court an opportunity to correct any error before the jury retires to deliberate." *Nichols Corp. v. Bill Stuckman Const. Inc.,* 105 N.M. 37, 40, 728 P.2d 447, 450 (1986) (citing *City of Albuquerque v. Ackerman,* 82 N.M. 360, 482 P.2d 63 (1971)); *see Baros v. Kazmierczwk,* 68 N.M. 421, 427, 362 P.2d 798, 802 (1961); *Hamel v. Winkworth,* 102 N.M. 133, 134, 692 P.2d 58, 59 (Ct.App.1984). Although the cited cases pertain to the rules of civil procedure, we find no reason for limiting the stated policy to civil cases.

Indeed, we conclude that the policy applies with even more force to criminal cases, and thus we now hold that on remand the court shall give due consideration to SCRA 1986, 5–608, as written.

## I. TRIAL JUDGE'S COMMUNICATIONS WITH JUROR

While the judge's pretrial conversations with the juror may not have been error, *see State v. Ramming,* 106 N.M. 42, 48–50, 738 P.2d 914, 920–22 (Ct.App.), *cert. denied,* 106 N.M. 7, 738 P.2d 125, *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987), when the juror persisted in making his objection to further service known to the judge, even well into the course of the trial, a greater degree of scrutiny of the judge's conversation with the juror should have been afforded Wilson than otherwise might have been the case. In *Ramming,* the juror in question wanted to convey to the judge her fear that her peers on the jury were not intelligent enough to understand the issues. After the judge conversed with the juror, in the presence of counsel for both parties, it was established that the juror's fear would not disqualify her from effective service.

Here, the juror had a far more disabling fear, namely, that his religious convictions would mandate his complete incapacity to serve on the jury during a portion of the

trial. Unlike the situation in *Ramming,* at no time did the court converse with the juror in the presence of counsel. In *Hovey v. State,* 104 N.M. 667, 726 P.2d 344 (1986), we held that it was improper for a trial judge to communicate with the jury during it's deliberations about *an issue of the case* without the defendant's personal participation. We have the same reservations about the trial judge's communications here as we had in *Hovey.* Justice Walters concurred in *Hovey* in order to emphasize that the defendant's right to participate in every phase of the trial was of constitutional dimension. She stated:

> [U]nless the defendant voluntarily elects to absent himself, or is excluded from the courtroom by reason of "disruptive, contumacious, or stubbornly defiant" conduct [*State v. Corriz,* 86 N.M. 246 at 247, 522 P.2d 793, 794 (1974)], his right to be present is a constitutional right that may not be waived by the attorney who acts without defendant's express consent.

*Id.* at 671–72, 726 P.2d at 348–49.

We do not extend our ruling in *Hovey* to cover every situation in which a trial judge communicates with jurors about a matter that is not at issue in the trial. Surely, as a hypothetical example, if a juror wrote the judge a note asking if the judge had received a promised telephone call from the juror's spouse about the success of the spouse's surgery that day, it would not prejudice the defendant for the judge simply to answer yes or no to the note out of the defendant's presence. Even in this hypothetical, however, the judge would be well advised to inform defense counsel and the defendant, individually and directly, of the substance of the communication, and to make a record of the communication as soon as practicable.

In a case such as the present one, where there had been three determined efforts by the juror to communicate with the judge, and where the substance of the communication involved the juror's further service, the defendant, individually and directly, should have been given the option of being present during the communication. While the trial judge fully and fairly notified counsel for both parties of the substance of her conversation with the juror, she should have offered Wilson himself the opportunity to be present during her conversation with the juror. In addition, the judge should have placed her conversations with the juror on the record. We note that the committee commentary to SCRA 1986, 5–610, states, "All communications between the judge and jury should be made a part of the record, whether made in the presence of defense counsel and defendant or not."

Here we hold that the trial court erred *both* in failing to offer Wilson a chance to be present during the judge's conversation with the juror *and* in failing to make a record of that conversation.

## II. THE PROSECUTOR'S ELICITATION OF TESTIMONY CONCERNING WILSON'S ALIAS, AND HIS REFERENCE TO WILSON AS A "DESERTER"

█ It is possible, although we think not likely, that the prosecutor innocently blundered his way into an elicitation of Wilson's alias. It is also possible, and perhaps more credible, that the prosecutor on closing argument inadvertently referred to Wilson as a "deserter," thereby inaccurately making Wilson a convicted felon, rather than accurately saying that Wilson had been convicted of the misdemeanor charge of "AWOL." The context of the circumstances surrounding the testimony leads us to conclude that Wilson's military convictions (which were twenty-two years old) erroneously were emphasized by the prosecutor, as were Wilson's alias, to Wilson's prejudice.

Wilson correctly has relied on *State v. Bobbin,* 103 N.M. 375, 707 P.2d 1185 (Ct. App.), *cert. denied,* 103 N.M. 287, 705 P.2d 1138 (1985), for the proposition that a witness' conviction for a crime involving punishment of less than one year may not be used to attack the witness' credibility. *See* SCRA 1986, 11–609. Yet, neither that case nor the underlying rule of evidence are apposite, as the testimony concerning the conviction was not used to attack anyone's

credibility. Rather, it was elicited unfortuitously by Wilson's own counsel during the cross-examination of a State witness.

Yet, it was the use that was made of the elicited testimony that gives rise to prosecutorial misconduct. Once the court had denied the prosecutor's request to inquire further of the witness concerning Wilson's military convictions, the prosecutor should have ceased from any further reference to Wilson's convictions, notwithstanding the fact that Wilson's counsel in closing argument himself referred to the testimony about those convictions. The subject was risky, and the prosecutor, having been forewarned, should have scrupulously avoided it, seeking zealously not to prejudice Wilson's right to a fair trial. Instead, the prosecutor intruded imprudently into the danger zone and then compounded his error by calling Wilson a "deserter."

The same lack of caution characterizes the prosecutor's elicitation of testimony about Wilson's use of other names. The prosecutor had adequate warning from the court's orders on the pretrial motions not to intrude into this sensitive area. When Wilson volunteered the alias "John Edward Goodloe," the prosecutor should have avoided his next question, "Why did you go under that name?", as he undoubtedly knew that the response would involve Wilson's prior military convictions.

■ If prosecutorial misconduct were the only issue before us, we would perhaps find, as to this issue, that the scales did not tip in Wilson's favor on appeal, relying, for example, on *State v. Taylor*, 104 N.M. 88, 95–96, 717 P.2d 64, 71–72 (Ct.App.), *cert. denied*, 103 N.M. 798, 715 P.2d 71 (1986), to the effect that Wilson's counsel had opened the door to the prosecutor's words on cross-examination and on closing argument. Here, however, we conclude that the doctrine of cumulative error is applicable. Other errors were committed during the course of the trial; defendant in other respects did not receive a fair trial. As we have stated elsewhere, "We must reverse any conviction obtained in a proceeding in which the cumulative impact of irregularities is so prejudicial to a defendant that he is deprived of his fundamental right to a fair trial. U.S. Const.Amend. VI, XIV; N.M. Const. art. II, § 14". *Martin*, 101 N.M. at 601, 686 P.2d at 943.

By this criterion, the prosecutor's elicitation of testimony concerning Wilson's alias, and the prosecutor's emphasis of Wilson's military convictions do not pass constitutional muster. Taken in the aggregate, in the context of the other errors committed at trial, the prosecutor's conduct amounts to reversible error.

## III. THE COURT'S INSTRUCTION ON FIRST DEGREE MURDER

■ On oral argument, the State contended that insertion of the phrase "had the victim killed" made the instruction more compact, and thus more specifically informed the jury on the nature of the alleged crime. While this argument has merit, we also are mindful of the compelling policy reasons underlying our holding in *Jackson v. State*, 100 N.M. 487, 489, 672 P.2d 660, 662 (1983) (premising reversal based on improper jury instructions on the court's discretion "to prevent injustice where a fundamental right of the accused has been violated").

Here, we do not find that the slight change in the uniform instruction eliminated an essential element of the crime in the instruction or that it prejudiced Wilson. The instruction did not differ materially from the uniform instruction. *See id.* at 489, 672 P.2d at 662. It could even be argued that rejection of the instruction on aiding and abetting, in conjunction with the court's slight alteration of the instruction on first degree murder, was helpful to Wilson. *See State v. Ochoa*, 41 N.M. 589, 608–09, 72 P.2d 609, 621–22 (1937).

## IV. PROOF BEYOND A REASONABLE DOUBT

■ While the evidence in this case arguably fell below the standard to which the State is held under its burden of proof beyond a reasonable doubt, we do not conclude the evidence was inadequate. The jury could have found guilt beyond a reasonable doubt.

For the foregoing reasons this case is reversed and remanded to the trial court for proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

WILSON, J., concurs.

RANSOM and MONTGOMERY, JJ., specially concurs.

BACA, J., dissents.

RANSOM, Justice (specially concurring).

To the extent that, from the opinion filed today, it may be inferred that the trial court's violation of Rule 5–608(D) constituted fundamental error, alone or in combination with other error, I demur. I concur, nonetheless, that it is important to the administration of justice that Rule 5–608(D) be adhered to in every criminal trial. The dispositive issues in my mind, however, are the matter of the dismissal of the juror without meaningful input and participation by defendant, and prosecutorial misconduct in the extraordinary efforts used to present to the jury the matter of the military conviction that had been ruled inadmissible.

MONTGOMERY, Justice (specially concurring).

I CONCUR with the result reached in the plurality opinion, for most of the reasons stated in Part II of the opinion. I find that the prosecutor's violation of the trial court's pre-trial orders in referring to the defendant's military conviction and eliciting testimony as to the defendant's previous alias amounted to prosecutorial misconduct. The prosecution's references to these subjects in violation of the court's orders—going so far as to call the defendant a "deserter" on cross-examination and in closing argument—for me "tip the scales" in the direction of reversible error. Since I do not agree that other errors were committed in the trial, I obviously do not believe the doctrine of cumulative error is applicable to this case.

I do not agree that the trial court's failure to make a record of whatever tran-spired at the time the instructions were settled amounted to fundamental error. I also do not agree that the trial court's communication with the juror outside the presence of the defendant, given all the circumstances in this case, constituted reversible error; and I join in Justice Baca's dissent on this issue.

I understand the plurality opinion to reject the defendant's attack on the trial court's instruction on first degree murder, and I agree with this disposition.

Since a new trial is necessary, I make no decision on whether or not the evidence satisfied the State's burden of proof.

BACA, Justice (dissenting).

Unable to agree with the majority opinion, I respectfully dissent. The majority considered four questions on appeal: the judge's in-chambers communication and eventual dismissal of a juror; the prosecutor's inquiry into Wilson's prior military conviction and his use of aliases; the trial court's alteration of the Uniform Jury Instructions; and the court's timing of objections to jury instructions. The majority found that each question taken singly was not sufficient to reverse the conviction, but taken together constituted cumulative error and therefore mandated a reversal.

The majority found Wilson was "deprived of a fair trial" partly because objections to jury instructions were not made of record before the jury retired to deliberate. The majority then went on to find that the altered Uniform Jury Instruction complained of and the refusal to give an aiding and abetting instruction was not error. As a matter of fact, the majority found that the instruction as altered did not differ materially from the Uniform Jury Instructions and further "it could even be argued that rejection of the instruction on aiding and abetting in conjunction with the court's slight alteration of the instruction on first degree murder was helpful to Wilson." It is difficult to see how the court "deprived Wilson of a fair trial" notwithstanding the fact that an opportunity to object to these instructions was not afforded until the jury had retired when this court has specifically

found that there is no harm and perhaps there is help to the defendant by the giving of these instructions.

At the trial below, in the docketing statement, and in the briefs filed in this court there is no complaint about the fact that the judge failed to take objections to jury instructions before submitting them to the jury. Only upon oral argument did this court unearth that fact. Though the procedure was flawed, prejudice to the defendant does not exist. I agree that the better policy is for a trial judge to have a hearing on the record for objections to jury instructions before the jury retires. This is strongly suggested by SCRA 1986, 5-608(D).

Under almost all circumstances when a jury has been impaneled, it is best that a trial judge not communicate with a juror except in the presence of counsel and the defendant. In this case, the trial judge communicated with a juror prior to impaneling and several days into the trial as well as receiving three notes from the juror concerning continued service through a religious holiday. In *Hovey v. State*, 104 N.M. 667, 726 P.2d 344 (1986), this court held that it was inappropriate for a trial judge to communicate with a juror concerning matters that are at issue in the trial. In this case, the trial judge did not communicate with a juror concerning matters at issue in the trial but only tried to deal with matters of scheduling around a religious holiday. The majority specifically did not extend the *Hovey* rule to cover every situation in which a trial judge communicates with a juror. When defense counsel and defendant were made aware of the fact that the conversations had taken place and the juror was to be excused, no objections were made either as to the conversations, the absence of a record, or the fact that the juror would not continue serving.

It is the better practice that all communications between the judge and juror be made a part of the record whether made in the presence of defense counsel and defendant or not. SCRA 1986, 5-610 suggests this procedure. Rule 5-610 by its very language "presence of defense counsel and defendant or not" would seem to suggest that under certain circumstances defense counsel and the defendant would not be present when conversations are held with jurors. No objections being made below, no showing of prejudice by the conversation, or the excuse of the juror, there is no prejudice to Wilson.

A more troubling facet of this case is the revelation of the prior criminal record of Wilson and aliases used by him, along with the gratuitous referral to Wilson as a deserter by the prosecution in closing argument after being warned by the court. The question of Wilson's prior criminal record, however, was elicited by his own counsel in cross-examination. The court in response to an objection gave a curative instruction that an A.W.O.L. conviction in a military tribunal was equivalent to a misdemeanor and was not a felony conviction. The misuse of this information by the prosecutor in referring to Wilson as a deserter in closing argument was inappropriate. The inquiry by the prosecutor as to various aliases by Wilson by contrast was less objectionable. The referral to the aliases could be explained by inadvertence or innocent response to proper questions. The majority holds that "if prosecutorial misconduct were the only issue before us we would perhaps find, as to this issue, that the scales do not tip in Wilson's favor on appeal." I agree this standing alone is not sufficient to tip the scales in Wilson's favor.

Finding no error in the judge's in-chambers communication and the dismissal of the juror; finding no error in the refusal of the Uniform Jury Instruction and the altering of another jury instruction; finding no error or prejudice to Wilson in the timing of jury instructions objections; and, further, finding prosecutorial misconduct does not tip the scales in Wilson's favor, I find no cumulative error. I would affirm the conviction.